Jonas Fischer, Respondent, v. The Hope Mutual Life Insurance Company of New York, Appellant.

Plaintiff effected an insurance on his life with the C. L. A. Company. That company reinsured its risks with defendant, the latter agreeing to pay to the policyholders "all such sums" as said company "may, by force of such policies, become liable to pay." The C. L. A. Company thereafter refused to accept payment of the premiums falling due on plaintiff's policy. In an action upon the agreement between the two companies, *held*, that plaintiff could maintain an action thereon; and that the agreement included a policyholder seeking compensation in damages for a failure of the C. L. A. Company to keep alive its policies by receiving payments of premiums when tendered; as it was by force of the policy that it became liable.

Plaintiff, before bringing this action, commenced an action against the C. L. A. Company, the defendant, and another company, to set aside the contract of reinsurance as fraudulent and void, and to have a receiver appointed of the assets of the former company, judgment wherein was rendered in favor of defendant. *Held*, that said judgment was no bar to this action.

(Argued March 19, 1877; decided March 27, 1877.)

APPEAL from the judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 8 J. & S., 291.)

This action was brought upon a contract made and entered into between the defendant and the Craftsman's Life Assurance Company ; both life insurance corporations organized under the laws of this State.

The agreement was executed May 25, 1872, the material portions thereof are as follows :

" That the party of the first part (defendant) in consideration of the acts and covenants of the party of the second part (The Craftsman's Company), hereinafter mentioned, and for other valuable considerations, has agreed to and does hereby reinsure the party of the second part, on all risks of the party of the second part, for which policies of said party of the second part are outstanding on this date, and hereby agrees to assure all such policies, and to pay to the holders thereof all such sums as the party of the second part may by force of such policies become liable to pay, including the dividends declared for the year 1872, on premiums not yet due, the liability for death losses to be limited to such deaths as may occur on and after this date."

" The party of the first part further agrees to accept from all holders of policies of the party of the second part a surrender of the same, and on such surrender to issue to such holders, in place of such surrendered policy or policies, a policy or policies of the party of the first part of like class and denomination, and for same amount as the said surrendered policies."

Upon the execution of the agreement the Craftsman's Company transferred to defendant the greater portion of its assets and thereafter ceased to do business.

The Craftsman's Company issued to plaintiff a policy upon his life, dated August 28, 1869, the premiums of which were duly paid by plaintiff up to August 28, 1872, when he tend-

ered the premium then due to the defendant, but it refused to receive the same.

Before this action was brought plaintiff commenced an action against the parties to said agreement and the New Jersey Mutual Life Insurance Company to set aside the agreement as *ultra vires* and void, and asking for the appointment of a receiver to take charge of the assets so transferred and for the payment of plaintiff's claim out of the same, etc. The said action resulted in a judgment dismissing the complaint.

The referee herein gave judgment for the amount of the premiums paid by plaintiff, with interest from the time of payment.

*Samuel A. Noyes,* for the appellant. The former action between the parties in this court is *res adjudicata.* (*Armitage* v. *Pulver*, 37 N. Y., 494.)

*D. S. Riddle,* for the respondent. The agreement of May 25, 1872, went into operation on that day, is good and valid and may be enforced by policyholders. (*Glen* v. *Hope Mut. Ins. Co.*, 56 N. Y., 379.) The amount of plaintiff's damages was the sum of premiums paid. (*Ainsworth* v. *Backus*, 12 Sup. C. R., 414; *Hawkins* v. *Conthorel*, 5 B. & S., 343; 2 R. S. (5th ed.), pt. 1, chap. 18, tit. 18, art. 2, § 68.)

FOLGER, J. If the plaintiff is within the terms of the contract between the two Life Insurance Companies, the case of *Glenn* v. *Hope Mut. Life Ins. Co.*, 56 N. Y., 379, is an authority that he may maintain, in his own name, an action thereon against the defendant.

He is within the terms of it, if the agreement of the defendant to pay to the holders of policies, from the Craftsman's Company, " all such sums as " that company " may, *by force of such policies, become liable to pay,*" includes a policyholder who is seeking compensation in damages for a failure of the Craftsman's Company to keep alive its contract, by

receiving payment of premiums when tendered. The word "*policies*," in the phrases above quoted from the agreement, means the contracts of insurance and endowment entered into by the Craftsman's Company. Whatever it should become liable to pay, by force of those contracts, the defendant agreed to pay. Anything which the Craftsman's Company could be compelled to pay by a person holding a policy (that is, a contract) from it, which it could not be compelled to pay if he did not hold a policy, that it became liable to pay by force of that policy. A party to a contract may be compelled to perform, specifically, that which he has therein agreed to do. Surely, in such case, it is by force of the contract that he becomes liable to be so compelled. He may be compelled to pay damages for non-performance. It is just as much by force of the contract that he becomes liable to pay, and is compelled to pay. If he had not made the contract, he would not have taken on relations with the other party to it, which would have made him liable to specifically perform, or to make compensation for non-performance. It is by force of the contract that those relations are created, and it is by the existence of the relations that he is brought into liability to do, or to suffer for not doing. So that it is by force of the contract that, if he performs, he does that which he has agreed to do, and it is also by force of the contract that, if he fails to do that which he has agreed to do, he becomes liable to pay, and is made to respond in damages.

This is so, upon a strict interpretation of the words.

When we consider the contract, in view of the circumstances in which it was made, it appears that such must have been the intent of the parties. One life insurance company was about to discontinue its business, and cease to carry out its contracts with its policyholders. Another life insurance company, in consideration of a transfer to it of nearly all the assets of the former, was about to agree to take upon itself the liability of the former to its policyholders. Now, it must have been in the contemplation of these two companies that not all of the policyholders of the retiring company would

accede to their arrangement, and surrender their policies, and take new ones from the reinsuring company. It must have occurred to them that those who did not surrender would have some claim, by force of their relation as policy-holders, against the retiring company—a claim which must be fairly met if the purposes of the companies in the trans-action were good. Would they not then be as likely to pro-vide in their agreement for that class as for those who would accede to the arrangement? Would not the Craftsman's company have insisted on protection from that liability, and would not the companies make provision therefor in the contract between them? The Craftsman's company was under liability to all its policyholders, and was bound to provide for those of them who, in reasonable expectation, would not surrender and take new policies from the Hope. Its officers could not but have apprehended this, and appre-hending, would naturally provide for it. Unless we admit the charge of bad faith, we are to presume that language of the contract, which does not forbid a construction showing such purpose, was used with that intent.

Nor does the plaintiff become, by any action he has taken, a general creditor of the Craftsman's Company. He is a creditor in a particular relation by virtue of his policy; because being himself willing, and attempting to maintain the contract it embodies, the company has failed and refused to maintain it, and he has suffered damage. He does not rescind the contract of insurance. He affirms, and sets it up and sues for a breach of it, on the part of the other contract-ing party. As much so as the payee of a promissory note, who, on failure of the maker to pay, sues it.

We think that the plaintiff has, by virtue of his policy and the agreement of the defendant, a right of action against it.

It does not appear distinctly, whether the defendant objects to the rule of damages adopted by the referee. There is no exception to the findings and conclusions of the referee, which explicitly raises the question. It does not appear that it was

considered or raised at General Term. The points in this court do not raise it with distinctness, though upon one of them, it is possible that a question of that sort might have been argued. We are not called upon to determine what abstractly would be the correct rule of damages in such a case. The defendant has agreed to pay all that the Craftsman's Company might become liable to pay. The Craftsman's Company, by what has transpired, has become liable to pay the sum of $377.98, and interest from 25th April, 1873.

The former action of the plaintiff against the three companies is not a bar to this action. The object and frame of that was entirely different. This action is quite other in its purpose.

The judgment should be affirmed.

All concur.

Judgment affirmed.