The People of the State of New York *v.* The Security Life Insurance and Annuity Company.

A receiver of the assets of an insolvent life insurance company, appointed under the act of 1853 (§ 17, chap. 463, Laws of 1853), so far as relates to his conduct, the distribution of the assets, or any of the proceedings subsequent to his appointment, is governed by the provisions of the Revised Statutes in relation to corporations, and by the practice of courts of equity.

Where, upon the application of the receiver, an order is granted, as required by the Revised Statutes (2 R. S., 467, § 56), for the publication of notice to creditors, and notice is duly published, claims not exhibited within the time specified in the notice are precluded from sharing in the assets.

The holders of running or unmatured life policies are not entitled to have a *pro rata* portion of the premiums paid by them refunded before payment to other creditors.

The provision of the Revised Statutes (2 R. S., 470, § 75), providing for refunding to the holders of open and subsisting contracts in the nature of insurance a *pro rata* portion of the premium, does not apply to life insurance; it applies only to fire, marine or other insurance having a definite term to run.

The holder of an unmatured life policy is however a creditor, and is entitled to share with other creditors in the assets; he is not to be regarded as a partner in the company, at least in the case of a stock corporation.

The word "members," as used in the provision of said act of 1853 (§ 107), providing that the company may sue or be sued by any of "its members or stockholders," is synonymous with "stockholders."

The charter of a stock life insurance company contained a provision to the effect that, after paying to the stockholders certain specified semi-annual dividends, and at intervals of three years, the net profits should be paid, twenty per cent to the stockholders and eighty per cent to the policy-holders, *held*, that such sharing in the profits did not make the policy-holders partners; that any dividend to them under this provision could in no proper sense, as to them, be called profits, but was simply an equitable adjustment of premiums paid.

The annual payment of premium upon a life policy is not paid solely for the year's insurance. The agreement is necessarily implied that the company will receive the premiums subsequently accruing, and keep the policy in life; also that it will obey the statute under which it was created and exists. Where it fails to keep on hand funds required by law, and becomes insolvent, discontinues business, and fails to carry its policies, it breaks its engagement with its policy-holders, and becomes liable for the breach.

The policy-holders are therefore claimants for damages, the same as other persons having running contracts with the company, which it has broken.

The damage of the policy-holder is the value of the policy destroyed; and in ascertaining this, resort may properly be had to tables used in the business of life insurance, showing the average expectancy of life.

Where a receiver, in fixing the value of unmatured life policies, used the tables annexed to the insurance act of 1868, (chapter 623, Laws of 1868,) *held* proper.

The excess of premiums paid during the early years of a policy over the same required to carry the risk for those years, may be taken by the receiver as the measure of present value, assuming that there has been no change in the value of the life insured except that caused by efflux of time.

*It seems*, that a receiver is justified in adopting the above principle, aided by such tables, in estimating the values of the running policies, although in the case of a particular policy the value so arrived at would not be the measure of damage of the holder, because the health of the insured had become so impaired since his insurance that his life is not now re-insurable; as it would be impracticable, in the cases of numerous policy-holders, to determine the state of health for re-insurance of each one, compared with his state of health at the date of his policy.

Where the receiver held notes given by policy-holders in part payment of premiums, *held*, that it was proper to off-set the amounts due upon such notes against the value of the policies, and to declare and pay a dividend upon the balance only.

The value of an unmatured paid-up policy is to be computed in the same manner as that of a policy upon which annual premiums are paid.

The referee, to whom it was referred to take proof and report as to the disposition of the assets, held that certain annuitants were entitled to receive the present value of their annuities, computed upon the basis of the Northampton tables, with interest at six per cent; *held*, no error.

Death claims maturing before the dissolution of the company are not entitled to a preference over the claims of holders of unmatured policies; all are entitled to share alike in the assets, in proportion to the amount of their claims.

A policy-holder died after the appointment of a receiver, and before the time up to which the premium upon his policy had been paid. His administrator served upon the receiver proofs of his death before the expiration of the time, under the published notice, for the presentation of claims. The referee allowed only the reserve value of the policy at the date of the dissolution of the company, computed in the same manner as the values of running policies were computed. *Held,* error; that the claimant was entitled to be allowed the present value of the policy at the time of the dissolution of the company, *i. e.,* the sum insured less the interest up to the time when by the terms of the policy the company was required to pay it.

(Argued June 10, 1879; decided September 16, 1879.)

These were appeals by certain policy-holders from an order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, overruling exceptions to, and confirming the report of a referee, to whom, upon petition of the receiver of said The Security Life Insurance and Annuity Company, it was referred, " to take proof and report to this court the names of all persons entitled to participate in the fund in the hands of the said receiver, and the respective amounts of their net claims against said fund; " also to " take proof and report to this court, with his opinion, as to what disposition shall be made of any and all premium notes in the hands of said receiver; " also to " take proof and report to this court, with his opinion, whether any claims against said receiver are entitled to preference in payment, and if so, in what order, and the names of the claimants entitled to such preference; " also to " take proof and report to this court, with his opinion, as to what dividend should now be declared among the creditors of said Security Life Insurance and Annuity Company from the fund in the hands of said receiver."

The facts appear sufficiently in the opinion.

*Robert Sewell,* for holders of death claims, appellants. The policy-holders were partners in the company, and were

liable for its losses to the extent of the premiums contributed. (*Mygatt* v. *N. Y. Co.*, 21 N. Y., 54, 61; *In re At. L. Ins. Co.*, 16 Alb. L. J., 453; *Grissils' Case*, L. R. [1 Ch.], 528; *Kean* v. *Johnson*, 1 Stockt., 401; Collyer on Part., 641, §§ 8, 1079; *Kohler* v. *B. R. Co.*, 2 Black., 715; A. &. A. on Corp., 591; Bissett on Part., 248; Story on Part., §§ 2, 107–109, 254, 255; *Oakley* v. *Aspinwall*, 2 Sandf., 7; *Penny* v. *Black*, 9 Bosw., 310; *Man. B. Co.* v. *Sears*, 45 N. Y., 797; *Ont. Bk.* v. *Hennessy*, 48 id., 545; *Bullard* v. *Kinny*, 10 Cal., 60; *Schimpf* v. *Lehigh V. Co.*, 7 Ins. L. J., 665; *In re European Co.*, 5 Bigelow Ins. R., 718; *N. Y. L. Ins. Co.* v. *Statham*, 3 Otto, 24.)   The policy-holders were not creditors of the company, within the meaning of the Revised Statutes, respecting proceedings against corporations in equity. (*King* v. *Ac. L. Ins. Co.*, 3 C. B. [N. S.], 151; 5 Bigelow Ins. R., 635; *Belknap* v. *N. Am. L. Ins. Co.*, 11 Hun, 282; *Day* v. *Conn. L. Ins. Co.*, 19 Alb. L. J., 195; *Trenton Co.* v. *McKelway*, 1 Beas., 133; *Comm. Co.* v. *Mass. Co.*, 112 Mass., 116; 119 id., 45; *Mut. Bene.* v. *Hilyard*, 8 Vr., 444.)   A member of a corporation cannot sue it at law for something connected with the very contract which makes him a member.   (*Culburton* v. *H. Co.*, 4 McL., 544.)   All debts of the company must be paid before claims which are not debts shall have any of the fund distributed to discharge them.   (Laws 1867, chap. 708; *Day* v. *Conn. L. Ins. Co.*, 16 Alb. L. J., 453.)   If the policy-holders were entitled to a return of premiums paid in advance, only the proportion unexpired of the period paid for in advance could be returned.   (*N. Y. L. Ins. Co.* v. *Statham*, 3 Otto, 93; *McKenty* v. *Uni. L. Ins. Co.*, 4 Bigelow Ins. R., 153; *Rawls* v. *Am. Ins. Co.*, 27 N. Y., 282.)   The policy-holders who had paid in notes were liable thereon for losses to the full extent of the notes.   (*Osgood* v. *Ogden*, 4 Keyes, 70; *Conyland* v. *N. C. Co.*, Phill. Eq. [N. C. R.], 341; *Farmers' Bk.* v. *Maxwell*, 32 N. Y., 579; *Hope M. Ins. Co.* v. *Perkins*, 2 Abb. Ct. of App., 383; *Hone* v. *Allen*, 1 Sand., 171; *Browner* v. *Appleby*, 1 id., 158; *Destaimes* v. *Merchants'*

*Co.*, 1 N. Y., 371; *Bangs* v. *Grey*, 12 id., 477; *White* v. *Havens*, 5 App. Ct. App. Dec.; *Cooper* v. *Shaver*, 41 Barb., 151; *Jackson* v. *Roberts*, 31 N. Y., 304; *Howland* v. *Meyer*, 3 id., 290; *Brown* v. *Crooke*, 4 id., 51; *Cruikshank* v. *Browner*, 11 Barb., 228; *Lawrence* v. *Nelson*, 21 N. Y., 158; S. C., 4 Bosw., 240; *Vanaten, Att'y-Genl.*, v. *New Jersey Co.*, opinion by chancellor of N. J., MS.; *Mygatt* v. *N. Y. Co.*, 21 N. Y., 57; Laws of 1849, chap. 308; Laws of 1836, 42 and 89, special charter; Laws of 1838, chap. 236, id.; Laws of 1840, p. 262, United I. Co.; Charter of Mutual Life Ins. Co.; Laws of 1842, chap. 246; *White* v.*Haight*, 16 N. Y., 321.)

*Horace W. Fowler*, for appellant, Gilliland. The relation between the policy-holder and the company is that of debtor and creditor. (*In re Miller*, 11 Hun, 98; *Cohen* v. *N. Y. Mut. L. Ins. Co.*, 50 N. Y., 624.) The holder of a policy matured by death is entitled to be allowed the face of his policy. (*Bell's Case*, L. R. [9 Eq.], 706; *Holdrich's Case*, 14 id., 72; U. S. R., § 506.) If the demand of the policy-holder against an insolvent life insurance company is one for damages, policies maturing by death before the distribution should receive a dividend on their face values. (*Bell's Case*, L. R. [9 Eq.], 706; *Holdrich's Case*, 14 id., 72; *Shaw* v. *Repb. L. Ins. Co.*, 69 N. Y., 286; *Frost* v.*Knight*, L. R. [7 Exch.], 112; *Roper* v. *Johnson*, L. R. [8 C. P.], 167.) In determining the value of a claim the court is not confined to facts known at the date of the receiver's appointment. (*Wilcox* v. *Plummer's Exrs.*, 4 Pet., 172, 182; Sedgw. on Dam., 118, 121, 122.)

*Raphael J. Moses, jr.*, for appellants, Kyler and others. The holders of current policies were entitled to the unearned portion of the premiums paid. (*Widows' Fund Assn.*, 17 Ves., 17; *Pearce* v. *Piper*, 1 id., 17; *Beaumont* v. *Meredith*, 3 V. & B., 181; *Statham* v. *N. Y. L. Ins. Co.*, 3 Otto, 24; *Fischer* v. *Hope Mut. Ins. Co.*, 69 N. Y., 161.) Such policy-

holders are entitled to a position as creditors for the reserve unearned. (*Bell's Case*, 7 Eq., 709; *Lancaster's Case*, 2 Cairn's Dec., 81; Hine's Ins. Statutes, §§ 17, 32, 33, 56; Laws 1869, chap. 161; *Leroy* v. *Globe Ins. Co.*, 2 Edm. Chy., 673, 674; *Croton Ins. Co. Case*, 3 Barb. Chy., 643.) The policy-holders were not partners in the company. (*Mygatt* v. *N. Y. Pro. Ins. Co.*, 21 N. Y., 52; *White* v. *Haight*, 17 id., 310.)

*Hamilton Cole*, for receiver. The order of General Term was appealable, all the persons entitled to share in the fund having been regularly brought into the proceeding and before the court. (3 R. S. [6th ed.], 751, §§ 69, 107.) The death claims are not entitled to priority in payment. (11 Hun, 96; *Lowerre* v. *Am. F. Ins. Co.*, 6 Paige, 482; *De Peyster* v. *Am. F. Ins. Co.*, id., 486; *Fisher* v. *Hope Mut. Ins. Co.*, 69 N. Y., 161.) The relation of the policy-holders to each other was not that of co-partners. (*Baldwin* v. *Burrows*, 47 N. Y., 199; *Ogden* v. *Astor*, 4 Sand., 311; *Patterson* v. *Blanchard*, 1 Seld., 186.) If the premium notes are not to be set-off they are not collectible. (3 R. S. [6th ed.], 41; *Osgood* v. *De Groot*, 36 N. Y., 348.)

*William Barnes*, for respondents. The referee was right in excluding all policy-holders and creditors who did not make any claim within the advertised period of six months. (*Harmony F. and Mar. Ins. Co.*, 45 N. Y., 313, 317; 9 Abb. Pr. [N. S.], 349, 350, 358; 2 R. S. [2d ed.], 380 [m. p. 466].) The referee properly held that the notes and other obligations given for premiums and the deferred premiums should be off-set *pro tanto* against the net values of note policies or other claims against the company. (2 R. S., 47, § 36; *In re Globe Ins. Co.*, 2 Edw. Chy., 625.) The provision of the Revised Statutes (2 R. S., 470, § 75), which authorizes receivers to cancel any contingent contract by consent of the party holding it, was designed to cover only cases of fire and marine insurance premiums. (Reviser's

note to § 75 [5th ed.], 744; Laws 1821, chap. 148; Laws 1817, chap. 146 ; Laws 1814, chap. 172 ; Act of 1836, passed January 18, 1836; *In re Croton Ins. Co.*, 3 Barb. Chy., 643.) Death claims were not entitled to priority over other debts and liabilities of the company. (2 R. S. [Edm's ed.], 484, § 37; id., 486, § 48; id., 492, §§ 72–75, 77–79; id., 89, § 28; *Lowerre* v. *Am. F. Ins. Co.*, 6 Paige, 485; *De Peyster* v. *Am. F. Ins. Co.*, id., 486; *Morgan* v. *N. Y. and A. R. R. Co.*, 10 id., 290; Hine's Ins. Laws, 104, § 32; 16 Assurance Mag., 395.)

EARL, J.    The defendant was dissolved and a receiver was appointed of its assests under section 17 of the act, chapter 463 of the Laws of 1853.    It was organized under the same act, and by section eleven of the act it was made subject to all the provisions of the Revised Statutes in relation to corporations, so far as the same were applicable, except as otherwise specially provided in the act.    No provision was made in the act regulating the conduct of the receiver in such a case, or the distribution of the assets or any of the proceedings subsequent to the appointment of the receiver.    All such matters were left to be regulated by the provisions of the Revised Statutes and the practice of courts of equity; and to those provisions and that practice we must look, so far as needful, for the solution of the questions presented for our consideration.

First.    The Supreme Court at Special Term, upon the application of the receiver, made an order for the publication of notice to creditors to exhibit their claims, as required by the Revised Statutes (2 R. S., 467, § 56), and the notice was duly published.    The referee held that claims not exhibited within the time mentioned in the notice were precluded from sharing in the assets ; and this holding was confirmed at both the Special Term and, as I understand its order, the General Term.    I entertain no doubt that this is right, for the reason stated in the opinion of the referee : (*In the Matter of Harmony F. and M. Ins. Co.*, 45 N. Y., 310).

Second. It is claimed upon the part of some of the holders of unmatured policies that they are entitled to have refunded to them a *pro rata* portion of the premiums paid by them, before the payment out of the assets of any other creditors ; and this claim is based upon the following provisions of the Revised Statutes (2 R. S., 470, ◊ 75) : " If there shall be any open and subsisting engagements or contracts of such corporation, which are in the nature of insurances or contingent engagements of any kind, the receivers may, with the consent of the party holding such engagement, cancel and discharge the same, by refunding to such party the premium or consideration paid thereon by such corporation, or so much thereof as shall be in the same proportion to the time which shall remain of any risk assumed by such engagement, as the whole premium bore to the whole term of such risk ; and upon such amount being paid by such receivers to the person holding or being the legal owner of such engagement, it shall be deemed canceled and discharged as against such receivers." Section 77 : " The receivers shall retain out of the moneys in their hands, a sufficient amount to pay the sums, which they are hereinbefore authorized to pay, for the purpose of canceling and discharging any open or subsisting engagements."

This claim has been disallowed by the court below and, we think, properly.

By the act of 1853, the corporations organized under it were made subject to such provisions of the Revised Statutes as were applicable ; and the sections above cited are not applicable to life insurance companies. They can apply only to fire and marine or other insurances having a definite term to run. In the case of a running or unmatured life policy, the time which shall remain of the risk cannot be known. If these sections apply, then the unjust result will follow that the more one has paid upon one of these policies the less he will receive ; and the one who has paid the least, and has the longest expectation of life, will receive the most. These sections are applicable only to cases where the insur-

ance is an indemnity for some certain time against some risk ; and in such cases, the amount paid for the indemnity may be apportioned. If the risk has been carried half of the time, half of the premium has been earned ; and the nearer the risk has been carried to the end of the time, the more of the premium has been earned, the less valuable the policy has become to the assured, and under these sections, therefore, less would have to be refunded. But life insurance is not an indemnity against any risk, but an absolute engagement to pay a sum certain at the end of a definite or indefinite time. In such cases, the policy becomes more valuable as its end is approached ; and any such settlement as could be made under these sections would be quite absurd.

But the claim is made on the part of some of the appellants that the holders of unmatured policies are not creditors, but partners in the company ; and that they are therefore not entitled to share in the assets until after payment of the death claims and of other creditors.

The argument that they are to be treated as partners is quite ingenious, but, I think, clearly unsound. The statute of 1853, to which this company owed its creation, made it a corporation. It had a capital stock of $110,000, divided into shares, which was contributed not by policy-holders, but by the stockholders. Its business was managed by directors chosen by the stockholders. No policy-holder, unless a stockholder, had any voice in any way in the election of its officers or the management of its business. Every policy-holder in such a company enters into engagements with the company, and not with any other policy-holder. He pays the premiums upon his policy, not to make a fund to insure others, but solely as a consideration of his own insurance. The company receives the money as its own, and holds it as its own, and may do with it what it will, except as it is restrained by some statute. It is wholly immaterial to the assured what the company does with the money, provided it remains solvent until the maturity of his policy. It is true that the company relies upon all the premiums paid to carry

on its business; and that it could not discharge its obligations out of its capital alone. The law requires that it shall keep and have at all times assets, invested in a certain way, sufficient to meet all its liabilities — that is, that it shall keep solvent. But they who pay their money for insurances are no more jointly interested, or in any sense partners, than the depositors in a bank. The depositors swell the assets of the bank and also its liabilities, and they have a common interest that the bank shall keep its funds so as to be able to discharge its liabilities; and that is all. It is true that when such a company insures one, it takes into account the fact that it has insured and is to insure many others, and that fact has a bearing upon the amount of premium charged; but the premium is after all solely for the particular insurance. The fund produced by the payment of all the premiums does not in any sense belong to the policy-holders, but belongs exclusively to the company; and the policy-holders are interested in it in the same way only that the creditors of any other corporation are interested in its funds.

There is nothing in the statute of 1853 which makes the policy-holders members of the company. Section ten of that act provides that the company may sue any of "its members or stockholders," and that any of the "members or stockholders" may sue it. The words "members" and "stockholders" here mean the same person. Every member of such a company is a stockholder, and every stockholder a member. The provision is wholly unnecessary and has no significance. It is a superfluous provision frequently found in similar statutes.

There is a provision in the charter of this company that the stockholders may receive a semi-annual dividend of not exceeding three and one-half per cent, and that, at intervals of three years, the net profits, after paying such dividends, shall be paid, twenty per cent to the stockholders, and eighty per cent to the policy-holders. It is claimed that this sharing in the profits makes the policy-holders partners. These profits were not to be paid to them as the income of any

business which they were carrying on or in which they were interested. They were the profits of the company in its business. The policy-holders could make no profits. They could never receive back more money than they paid, and never as much, interest upon their payments being taken into account; and hence any dividend to them under this charter could in no proper sense be called, as to them, profits. As to the company, they might be profits earned by good management and too large premiums, — profits earned solely out of the stockholders. These so-called profits, when divided, would be simply an equitable adjustment of premiums paid. If such profits should exist, they would show that the company had been exacting more premiums than were just and fair; and the excess was to be refunded in this mode.

This novel claim of partnership is not sustained by any authority, and even in the case of a mutual life insurance company, was repudiated by Judge ALLEN in his opinion in *Cohen* v. *N. Y. Mut. Life Ins. Co.* (50 N. Y., 610).

But the further claim is made that these policy-holders although not partners are not creditors, and as such entitled to share in the assets of the company on a footing of equality with other creditors; and this claim must now be somewhat examined.

It is true that there is no provision in the policy that any portion of the premiums shall be refunded. There is an agreement on the part of the company that upon the payment of the annual premiums, it will pay the stipulated amount at death. There is also the agreement necessarily implied, that it will receive the annual premiums and carry the insurance to its term. The annual premium is not paid solely for an insurance for the year in which it is paid, but as stated by Mr. Justice BRADLEY in *New York Life Insurance Company* v. *Statham* (93 U. S. R., 24), each premium is part consideration of the entire insurance for life; or as stated by Mr. Justice STRONG in the same case, the assured, by paying the first premium, obtains an insurance for one year, together with a right to have the insurance continued

from year to year during his life, upon payment of the same
annual premium, if paid in advance. Whichever of these
be the true theory, the agreement is necessarily implied
that the company will receive the premiums and keep the
policy in life; and this is not all. The company is the
creature of statute, and its mode of action for the protec-
tion of the policy-holders is regulated by statute. From
the nature of the case, the agreement must also be implied
that it will obey the statute, the law of its creation and of
its existence; that it will do its business as required by the
statute; that it will properly keep and invest its funds, and
be in a condition at all times as the statute requires to dis-
charge all its liabilities. Therefore when it violates the law,
fails to keep on hand funds required by law and becomes
insolvent, discontinues business, makes it impossible for the
assured to pay premiums, and fails to carry the policies,
it has broken its engagements with its policy-holders and
becomes liable to them on account of such breach. The
policy-holders then have a claim for damages, just as they
would have if while doing business it had without just
cause refused to receive the payment of premiums and to
continue the policies in life; and to this effect have, I believe,
uniformly been the decisions: (*N. Y. Life Ins. Co.* v. *Stat-
ham, supra; Fischer* v. *Hope Mut. Life Ins. Co.*, 69 N.
Y., 161; *Bell's Case*, L. R. [9 Eq.], 706; *Cook's Case*,
id., 703; *Holdich's Case*, L. R. [14 Eq.], 72.) These policy-
holders are therefore in the same position as any other per-
sons would be who had running contracts of value with the
company, which it had broken,—claimants for damages.

What is the damage sustained by each of these policy-
holders? Clearly the value of the policy which has been
destroyed. When such value has been ascertained, the true
measure of damage has been arrived at. But the difficulty
is to determine the value. In any given case, the precise
value cannot be ascertained. If the time of death were cer-
tain and the rate of interest determined, there would be no
difficulty. Then the present value of the amount to be paid

at death, diminished by the amount of the present value of all the premiums to be paid would give the value. But the time of death is uncertain, and hence the present value of a running policy must always be somewhat speculative and uncertain. Yet, as in all cases of difficulty, the courts charged with the duty of ascertaining value must take the best light the nature of the case admits. To persons of a certain age there is an averge expectancy of life ; and this is shown in certain tables used in the business of life insurance showing the expectancy of life for persons of all ages. These tables are built upon long and varied experience and are deemed sufficiently reliable, in the absence of a better basis, for the guidance of the courts, of public officers and of insurers. One of such tables is annexed to the act, chapter 623 of the Laws of 1868, and that is the table used by the referee in this case. As before stated, the annual premiums are not the consideration of insurance for the year in which they are paid ; for they are equal in amount, whereas the risk in the early years of life is much less than in the later. Therefore during the early years, the assured has paid more than sufficient to carry the risk during those years ; and this excess is to aid in carrying the risk during the later years when the annual premiums would be insufficient for such years. This excess is called the equitable value of the policy and goes to make up what is called the reserve fund. This reserve, together with the same annual premiums, ought to be sufficient to enable the assured to obtain a policy for the remainder of his life for the same amount in another solvent company, and hence may be taken as the measure of present value, assuming that there has been no change in the value of his life since his insurance, except that caused by the efflux of time. But the health of a policy-holder may since his insurance have become so impaired that his life is not now reinsurable, and hence in his particular case the value to be arrived at upon this basis would not be the measure of his damage. But yet I am inclined to think that even in such cases the basis would have to be generally adhered to, for

the reasons stated by Lord Cairns in *Lancaster's Case*, to be found in a note to *Holdich's Case* above cited, because it would be wholly impracticable in the cases of thousands of policy-holders to determine the state of health for re-insurance of each policy-holder, compared with his state of health at the date of his policy. The inquiry would be so much a matter of speculation and uncertainty, and would lead to so much litigation, delay and expense that it would be practicably impossible, it seems to me, to administer the assets of an insolvent company in that way. But what the general rule in such a case should be it is not important to determine now, as all these lives must be assumed to be in a normal state, as there is no proof as to the precise state of any one. As I understand it, the referee in this case adopted the basis mentioned, with the aid of the table above referred to, in estimating the values of the running policies at the date of the dissolution of the company; and in this I cannot perceive, from any evidence in the case or any information furnished by the briefs of learned counsel, that any error was committed; and I therefore conclude that these policy-holders are creditors of the company for the present values of their policies as thus estimated.

Third. The receiver holds a large amount of premium notes given by policy-holders in part payment of premiums; and the referee held that the amounts due upon such notes should be off-set against the value of the policies, and that the dividend should be declared and paid upon the balance. In this there was no error. A policy-holder who has given such a note is a creditor only for the balance, after deducting such note from the amount due him for the value of his policy; and in holding that the dividend was to be made upon such balance, the referee has followed the rule laid down in the statutes and the decisions. (2 R. S., 47, § 36; 2 id., 464, § 42, and p. 469, § 68; *Matter of Globe Ins. Co.*, 2 Edw. Ch., 625; *Osgood* v. *De Groot*, 36 N. Y., 348.)

Fourth. Our attention is called to the case of an unmatured paid-up policy, and the claim is made that it should

be treated differently from unmatured policies upon which annual premiums are payable. But there can be no difference. The value of such a policy must be computed in the same way as the others. It is the balance of the premium, ascertained by the rules used in such cases, necessary to carry the policy to maturity; or in other words, the unearned premium, which is called the reserve.

Fifth. There are several annuitants of this company — persons to whom the company for gross sums paid agree to pay certain sums annually during life; and the referee held that these persons were entitled to receive the present values of their annuities, computed upon the basis of the Northampton tables, with interest at six per cent. It is claimed on behalf of some of the appellants that in this there was error. I can perceive none. These are not cases of insurance, and they are not to be governed by any of the rules applicable to life insurance. They are cases simply where for a gross sum paid the company became bound to pay certain sums annually during the life of the annuitants. It has been the uniform rule of the courts in this State to use those tables to ascertain the present value and to capitalize such annual payments. (*Schell* v. *Plumb*, 55 N. Y., 592; rule 76 of the Supreme Court.)

Sixth. The claim is made that the death claims which matured before the dissolution of the company should be paid before the claims of the holders of unmatured policies; and I think this claim was properly disallowed by the referee. Upon the assumption which we have shown to be a proper one,—that the holders of such policies are creditors of the company—this claim has no basis to rest on. No decision has ever been made, that I can find, giving the preference claimed. The death claimants have no lien, legal or equitable, upon the funds of the company; and without such lien, they can have no preference. It is the rule of the statute, as well as of equity, that all the creditors of such a corporation, when it becomes insolvent, shall share in its assets in proportion to their claims: (2 R. S., 47, § 36; p.

466, § 48; p. 471, § 79.)   The fact that one claim is matured gives it no preference over others not matured.   There is nothing in the nature of life insurance that gives the preference.   One who has paid his money to carry a policy to maturity has no better right or greater equity than another who has paid his money to carry a policy toward maturity. The holder of a running policy has paid his money not to make a fund to pay death claimants, but for insurance upon his own life.   He expects the benefit of the money he has paid, either by receiving the amount insured at the maturity of his policy, or damages for the breach if the company fails to carry his policy to maturity.   To the extent of such damage he is on the same footing, legal and equitable, with every other creditor.   The opinion of Chancellor Runyon in the case of *Vanatta* v. *N. J. Mut. Life. Ins. Co.*, with a copy of which we have been furnished, is not in point, as that was a mutual company, in the charter of which the holders of running policies were liable to assessment to pay death losses.

Seventh. This company was dissolved and a receiver appointed December 14, 1876.   Thomas J. Lockwood holding a life policy upon which the premiums had been paid to March 27, 1877, died March 15th.   The appellant Gilliland was appointed his administrator, and served upon the receiver proof of his death May 23, 1877, long before the expiration of the time under the published notice for the presentation of claims.   The referee allowed him only the reserve value of his policy at the date of the dissolution of the company, computed in the same way as the values of running policies were computed, disregarding entirely the fact of the subsequent death of the assured.   In this I think he erred.   The claimant was entitled to be allowed as his damage the value of this policy.   There is no statute regulating how such value, as between the receiver and the claimant, shall be determined.   The rules by which the referee determined the values of running policies will not in all cases do justice.   In some cases, they may give a claimant more damage than he has sustained, and in other cases, less.   In their general

application, however, they will work out results sufficiently accurate for judicial action. In general they furnish the only practical basis of computation, and hence are sanctioned. But these rules, adopted from the necessity of the case, should not be used where upon facts existing the precise value of a policy may be easily ascertained. Their use is not then justified by any necessity or consideration of convenience. Here the whole premium had been paid, and at the time when the claim was presented, the precise value of the policy at the time of the dissolution could easily be shown. It was free from uncertainty or speculation. The amount insured was payable ninety days after the proofs of death; and the present value of that sum on the fourteenth day of December was the value of the policy, and that value could be ascertained like the present value of any certain sum of money payable at a definite future day. There can be no embarrassment in allowing the values of such policies to be computed in this way where the death occurs and the proofs of death are furnished at any time before the expiration of the time for presenting claims. This mode of computation is sanctioned by *Bell's Case* and *Holdich's Case* above cited.

I have now considered all the allegations of error brought to our attention by the various appeals; and my conclusion is that the order appealed from should be affirmed, except as to the appellant Gilliland; and that as to him it should be modified to conform to the views above expressed. Costs in this court must be allowed to the receiver and to the appellant Gilliland, to be paid out of the assets, but to none of the other parties.

All concur.

Ordered accordingly.