# SUPREME COURT.

In the Matter of the EMPIRE MUTUAL LIFE INSURANCE COMPANY.

*Insurance (Life) — Reinsurance of policies by company no excuse for failure by policyholders for ten years to pay premiums — Nor is the act of reinsuring a violation of its contract with its policyholders.*

Reinsurance of policies by a life insurance company formed under chapter 463 of the Laws of 1853 is no excuse for failure by policyholders for ten years to pay premiums, the act of the company in reinsuring not being a violation of its contract with the policyholders, and if it was, they should have acted with reasonable promptness.

*Ulster Special Term, September,* 1882.

EXCEPTIONS to referee's report.

*George W. Wingate,* for receiver.

*John C. Keeler,* deputy attorney-general, and *Wm. D. Whiting* and *Lucius McAdam,* in behalf of policyholders sustaining such exceptions.

*Raphael J. Moses,* for sundry policyholders, opposing such exceptions.

WESTBROOK, *J.* — On the 12th day of March, 1881, Mr. Samuel B. Hamburgher was, on the motion and nomination of the attorney-general of the state, appointed referee to pass upon claims against the Empire Mutual Life Insurance Company.

The referee has, after a full hearing of all parties, made his report to the court, by which he finds that certain policyholders, who failed to pay the premiums upon their policies after June 7, 1872 (the day upon which the Empire reinsured its outstanding risks with the Continental Life Insurance Company), had not, by such non-payment, forfeited their policies, and that they are entitled to share in the fund which the court has, by receiver, in its hands for distribution. To that part of the report exceptions have been filed, which will now be examined.

The Empire Mutual Life Insurance Company was formed under chapter 463 of the Laws of 1853, the title of which is, "An act to provide for the incorporation of life and health insurance companies, and in relation to agencies of such companies." It continued the business which it was organized to carry on, that of life insurance, until the 7th day of June, 1872, when it reinsured its risks in the Continental Life Insurance Company, undertaking to transfer to such latter corporation its assets and to retire from business pursuant to the authority conferred upon it by section 19 of the act aforesaid, and under which it was created.

Very many of the policyholders of the Empire consented to the transfer and have surrendered their policies, accepting those of the Continental in lieu thereof. Those, however,

which hold the policies to which the exceptions relate have
neither accepted nor refused to accept the insurance of the
Continental in the stead of that of the Empire, but have
omitted to pay the premiums reserved by their policies,
remaining entirely silent, and though cognizant of the
attempted transfer of assets, discontinuance of business, and
contract of reinsurance, have in nowise, prior to the present
proceeding, dissented therefrom.   The Empire Company has
never been dissolved, nor adjudged insolvent; but on the
contrary, for several years it kept an office for the transaction
of its business, and has in fact, though a receiver was
appointed over it on January 14, 1879, thus far paid its
creditors in full.   The Continental was placed in the hands
of a receiver on the 25th of October, 1876.

Relying upon the case of *Meade* agt. *The St. Louis
Mutual Insurance Company* (51 *How. Pr. Rep.*, 1), the
referee has allowed the policies, which have been described,
as valid claims upon the fund.   The exceptions present the
legality of the allowance.

A reference to the case relied upon will show that it decides
no such questions as are involved in the policies allowed as
valid in the report now presented.

*First.* The St. Louis Company was a corporation created
under the laws of Missouri.   In the case referred to,
judge PRATT shows that the company was not author-
ized by its charter to reinsure its risks and transfer its
assets, "for the purpose," to use the exact language of his
opinion, "of winding up the company." The Empire, on
the other hand, was expressly authorized (*sec.* 19 *of chap.* 463
*of Laws of* 1853) to withdraw from business and necessarily,
therefore, as an incident thereto, it was also empowered to
use its assets to extinguish its liabilities, which was all it did
when it procured for its policyholders reinsurance, which it
asked them to accept in lieu of its own obligations.   It did not
bankrupt itself, but on the contrary always retained sufficient
assets to meet its liabilities.   Its action was not *ultra vires*, as

that of the St. Louis company was, and it did not for such a cause give the insured an immediate remedy upon their policies of insurance. This conclusion not only clearly follows from the section of the act of 1853, to which reference has been made, but the legality of contracts of reinsurance has been expressly decided (*Glen et al.* agt. *The Hope Mutual Life Ins. Co.*, 56 *N. Y.*, 379; *Fischer* agt. *The Hope Mutual Life Ins. Co.*, 69 *N. Y.*, 161). The language of EARL, J., in *People* agt. *Security Life Insurance and Annuity Company* (78 *N. Y.*, 114, *see p.* 125) is not at all inconsistent with this view. The Security was an insolvent corporation, confessedly so, and had not attempted to do what the Empire has done, viz.: reinsure its risks and retire from business. It was of a violation of law and discontinuance of business caused by actual insolvency that judge EARL spoke when he said that it had thereby " broken its engagements with its policyholders," and had become " liable to them on account of such breach."

*Second.* In *Meade* agt. *St. Louis Mutual Life Insurance Company* (51 *How.*, 1) the plaintiff promptly avowed his dissent from the attempted reinsurance (*pp.* 3, 4 *and* 5) and brought his suit.

In the cases now presented, the insured expressed no dissent. They permitted the company to act upon the assumption that they intended to abandon the insurance. For nearly ten years they failed to pay premiums, and after this lapse of time they ask that their policies be deemed to be in life, and their failure to pay premiums excused upon the ground that the corporation had, itself, violated the contract of insurance by reinsuring its policies and transferring assets to effect reinsurance. It has already been shown that the act of the company was not a violation of its contract with the policyholders, asserting the present claims, but if it was they should have acted with reasonable promptness. Having slept upon their supposed rights for nearly ten years, and neglected to pay their premiums. they are in no condition to assume now, that the com-

pany first broke its engagements with them.  In the matter of *Coggeshall* agt. *The Continental Life Insurance Company,* it was held by the judge writing this opinion, that a policy-holder, who had, for several years, neglected to pay his premium, without assigning any reason therefor, could not protect himself against a forfeiture of the policy by showing that the company was, during the time of such non-payment, unable to make good its contracts; and that it was necessary for him to put his refusal to pay upon that ground, notifying the company thereof.  That decision is directly in point.  Grant that the contract of insurance, by the transfer of assets to the Continental for the purpose of reinsurance, was broken, it was still competent for the holders of policies of insurance to abandon them, and of such abandonment, the failure to pay premiums for nearly ten years, without any explanation whatever conveyed to the insurer, must be held conclusive (*Lawrence* agt. *Dale,* 3 *Johns. Ch.,* 23; *same case on appeal, under title of McNeven and ors.* agt. *Livingston and ors.,* 17 *Johns.,* 437; *People* agt. *Widows and Orphans' Life Ins. Co.,* 15 *Hun,* 8).

The exceptions which have been discussed, must, for the reasons stated, be sustained, and the report, in other particulars, confirmed.