THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THE GLOBE MUTUAL LIFE INSURANCE COMPANY, Appellant.

### (Claim of MARIE OESTERLE.)

*Policy of life insurance — what must be shown to justify the refusal of the holder to pay the premiums thereon on account of the insolvent condition of the company.*

When the holder of a policy issued by a life insurance company attempts to justify his failure to pay a premium due thereon, by proving the fact of the insolvent condition of the company, he must show his readiness and willingness to perform had the company not been insolvent, and also, it seems, that the business of the company had, at the time the premium came due, been actually suspended either by some act of the company itself, or by some proceeding instituted against it for that purpose.

Appeal from an order made at a Special Term, confirming the report of a referee.

*Raphael J. Moses, Jr.*, for the claimant.

*George W. Wingate*, for the respondent.

Brady, P. J.:

On the 13th of April, 1873, the Merchants' Life Insurance Company, a corporation duly organized and existing under the laws of this State, and doing business as a life insurance company, issued a policy of insurance upon the life of John E. Oesterle, for the benefit of his wife, who is the claimant, in the sum of $3,000. On the 7th of May, 1875, the company named was dissolved and Edwin L. Alexander appointed its receiver.   On the twentieth of May following the receiver, by authority derived from this court,

directed the Globe Mutual Life Insurance Company to reinsure all the risks assumed by the Merchants' Life Insurance Company, upon an agreement by the receiver that he should pay four and one-half per cent reserve on such policies, and transfer to the Globe Mutual Insurance Company all the interest in the Merchants' Life Insurance Company deposited with the insurance superintendent.

The policy issued for the benefit of the claimant Mrs. Oesterle, was surrendered to the Globe Mutual Insurance Company on October 14, 1875, its value then it would seem having been determined to be $184. A policy was then issued by the Globe Mutual Insurance Company in exchange. This, however, was subsequently surrendered and a new policy issued by the company just named. It seems to have been issued at the same rate of premium as the original one, but in consequence of the assured having increased three years in age, the regular premium would have been twelve dollars and sixty-nine cents in addition. It appears further that the reserve value of the Merchants' policy was allowed as a credit of twelve dollars and sixty-nine cents on each of the ten annual payments, in which the premium mentioned in the new policy was to be paid. By the understanding the assured accepted the last policy mentioned, and paid the premiums upon it up to the 15th of April, 1879, on which date a premium became due which was not paid.

By the policy which was actually delivered, the premium was to be paid in semi-annual payments on the eighteenth days of October and April in each year. But paragraph four in it is as follows, and is one of the express conditions and agreements upon which it was accepted, namely : " It is understood that a special grace of thirty days is allowed on the payment of renewal premiums on all policies in this class." It appeared also that on the 10th day of March, 1879, a notice was sent under and pursuant to the provisions of chapter 321 of the Laws of 1877, to " J. C. Oesterle, 45 Rivington street, City," by depositing the same in the post-office for delivery, advising the person addressed that the premium on the policy therein mentioned would become due on the eighteenth of April, and that unless the same was paid on or before that day, the policy would be void and all previous payments forfeited to the company, unless otherwise provided by the conditions of the policy as to forfeiture.

It also appeared that on March 29, 1879, the trustees of the Globe

Mutual Life Insurance Company appointed a committee to investigate its condition, and that on the 15th day of May, 1879, they had agreed on the report to be made, although it was not signed until the twenty-sixth of that month ; and which report was substantially that the company was insolvent.   And in consequence of such report on the 27th day of May, 1879, an action was commenced on behalf of the people by the attorney general of the State, to declare the corporate existence of the company dissolved and for the appointment of a receiver, and which, according to the statements in the complaint, was instituted in accordance with a resolution passed by the board of trustees that it was for the interest of the policyholders that the attorney general should take immediate proceedings for the appointment of a receiver.   On the twenty-ninth of May a receiver was duly appointed.   It also appears that John C. Oesterle died on the 25th day of September, 1879, leaving his wife him surviving, and that on her behalf the receiver was notified of a claim made under the policy issued by the Globe Mutual Life Insurance Company.

The referee found the several facts stated, and also that the Globe Mutual Life Insurance Company was doing business as a life insurance company up to the 25th of May, 1879, but that the company became insolvent on the 27th of May, 1879, that being the day on which the action was commenced by the attorney general, as already stated, and the company was enjoined and restrained from the further transaction of its business.   The referee also found that John C. Oesterle failed to pay the premium which was due on the 15th of April, 1879, and as a conclusion of law founded upon that fact, that the claimant was not entitled to receive any sum whatever from the Globe Mutual Life Insurance Company or its receiver.

The fourth paragraph of the policy which provides for the special grace mentioned, is not alluded to in the report, and it seems to have been assumed by the referee that the premium was absolutely due on the fifteenth of April, and that the requisite notice had been served with regard to it.   The proper exceptions were taken to the report, and several requests to find were made, which are sufficient to cover the proposition upon which this appeal is to be disposed of.

The provision as to special grace of thirty days to which reference has already been made, extended the time of payment, by virtue of

the terms and conditions of the policy, until May 18, 1879, and until which day the assured had the right to pay the premium and continue the policy. Prior to that time the committee appointed to investigate the affairs of the company had arrived at the conclusion that it was insolvent, and were only awaiting the preparation of the report to so declare. The result had been, as already suggested, determined upon that day, and there is no proof in the case that the company continued after that time to do business. It is true that no action had been taken by the authorities to declare the company insolvent until the twenty-seventh, which was one day after the report had been signed by the committee of investigation; but the result, as already suggested, had been declared prior to that time, though not in the form of a report, and the company, through its officers, must be assumed to have known that they were insolvent.

The question presented upon this state of facts is, whether the insolvent condition of the company did not absolve the assured from the obligation to pay the premium. It was held _In the Matter of the Attorney General agt. The Continental Life Insurance Company_ (see report of decision, Daily Register, March 25, 1882) that the consequences of the failure to pay the premium upon the policy involved could not be avoided by an offer to prove that the company was and had been, for a long while prior to the time when the premium became due, insolvent. The court said, in deciding the case, that there was nothing to show that the failure to meet the premium was because of the insolvency of the company. Such is the case here. It was also said that if the claimant wished to be excused from the consequences of his failure to perform his part of the contract, he must at least show his readiness and willingness to perform. There is no offer to show anything of that kind in this case. It was also said in that case, " there is enough to permit the inference to be drawn, from the failure to pay the premium, that the claimant intended to abandon the insurance." There is nothing in this case to prevent such inference.

There can be no doubt that a person does not forfeit his policy by omitting to pay the annual premium when the company issuing the policy has ceased to do business, transferred its assets and become insolvent. The implied contract it makes with its policyholders is, that it will continue business and keep able to perform its obliga-

tions (*Matter Empire Mutual Life Ins. Co.*, opinion by RUGER, C. J., 27 Alb. Law Jour., 372), and there is no doubt that the further payment of premiums is excused by the insolvency of the company. (*Atty. Genl.* v. *Guardian Mut. Life Ins. Co.*, 82 N. Y., 339.) But in the case just cited the premiums became due after the appointment of a receiver. The court said : " The further payments of premiums were excused by the failure of the company, as well as by the express notice of the receiver that he would receive no more premiums." The case of *Fischer* v. *Hope Life Insurance Company* (69 N. Y., 164, 165), and the case of *People* v. *Security Life Insurance Company* (78 N. Y., 125) are not adjudications establishing the proposition that the mere fact of an apparent or assumed insolvency, without a formal declaration thereof, in some mode, excused the payment of the premium. Indeed no case has been found in which a court has gone so far as to say that a suspicion or impression of existing insolvency in a life insurance company, excuses the payment of the premium. On the contrary, it has been held in the case of the *Universal Life Insurance Company* v. *Whitehead* (10 Ins. Law Jour., 337), that a temporary injunction enjoining a life insurance company from doing business pending an inquiry into its insolvency, did not excuse the payment of the premium or the doing of any act by which any right was to be preserved, although the agent advised the assured to await the result of the litigation before paying the premium which was due.

The Globe Mutual Life Insurance Company was undoubtedly insolvent before the last premium was payable, assuming that the time to pay was extended by the provision for a special grace of thirty days, which would carry it to the eighteenth of May ; but no formal declaration was made to that effect and no proceedings taken to have it so proclaimed. The claimant, if the omission to pay had been put upon that ground, might, as suggested, have the benefit of that incident, although it is not certain under the authorities that it would be of value. If the question were new I should be inclined to hold that the insolvency existing excused the payment, whether the claimant knew it or not, inasmuch as it would be the duty of the company not to receive the premium under the circumstances. This disposes of the chief question arising upon the appeal. It may be further said that the contract which was

made between the assured and the Globe Mutual Life Insurance Company, involved a surrender of all rights acquired by the policy issued by the Merchants' Life Insurance Company, and the contract was one which was not prohibited by any statute or by any adjudicated case, and was one also which was made for the benefit of the assured, inasmuch as the company assumed all the liabilities incurred by the Merchants' Life Insurance Company for deaths occurring subsequent to the year 1875. The surrender was not of the policy *eo nomine*, but of the damages caused by the failure of the company to perform its contract of assurance. (*People* v. *Security Life*, 78 N. Y., 125.)

As the claim of Mrs. Oesterle is understood in its presentation to the court, it is necessary, in order to sustain it, whatever the claim may be, in amount, to declare that the surrender of the policy secured in the Merchants' Life Insurance Company to the Globe Mutual Insurance Company was invalid, because of Mrs. Oesterle's legal disability to make any transfer of it, and also that there was no obligation to pay the premiums which became due in May, 1879, in consequence of the existing, though not proclaimed insolvency of the company, and although the company had not ceased to do business, and ostensibly at least, had continued in business until the resolution adopted by the board of trustees upon the twenty-sixth of May, and which avowed the necessity of a corporate dissolution and the appointment of a receiver. The courts seem to have regarded the day on which there was an actual suspension of business, by the act of the company or by some proceeding against it preventing it from doing business, as that upon which its rights and obligations and the rights of its creditors were definitely settled. (*Attorney Gen.* v. *N. America Life*, 82 N. Y., 186.)

For these reasons we think that the referee was right in his conclusions; that the order appealed from was correctly made, and that it should be affirmed, with costs.

DANIELS, J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Order affirmed, with costs.