In the Matter of the People of the State of New York by the Attorney-General, Respondents, *v.* The Atlantic Mutual Life Insurance Company, Appellant.

The decision of the Special Term, restraining a life insurance company from the further prosecution of its business, and appointing a receiver thereof, upon application of the attorney-general under the insurance law (§ 7, chap. 902, Laws of 1869), is not final; it is for the General Term, and for this court, to critically scrutinize the proceedings in every case, and to determine whether good cause existed for interference, and whether there is sufficient reason for continuing it.

That determination should be based upon the answer, derived from such scrutiny, to the question, are the assets of the corporation sufficient to justify the belief that it may continue the business of life insurance with safety to the public?

Where it appeared by the proofs upon such application that the assets of the company were less than the amount of the values of the outstanding policies by about one-tenth of that amount; that the capital was entirely sunk; that the assets were of a kind not readily convertible or available; that a large share of the assets had been kept as a cash deposit with a private banker, who was an officer of the company, without any agreement as to interest and without security against loss; that the trustees were not in the practice of holding regular meetings, or of supervising the affairs of the company; that dividends were paid without a regular meeting or vote of the board of trustees, when there had been losses and a depreciation in the value of its assets, and when it was impossible to know whether or not the capital had been impaired. *Held*, that there was sufficient cause for interference, and that the exercise of a sound discretion would not authorize a reversal of the order granting the application; but that a clause in the order dismissing the corporation was improper.

(Argued June 11, 1878; decided June 18, 1878.)

Appeal from order of the General Term of the Supreme Court, in the third judicial department, affirming an order

of Special Term, which enjoined and restrained the said The Atlantic Mutual Life Insurance Company from the further prosecution of its business, appointed a receiver of its assets, and vested in him all its estate, real and personal, " including the securities deposited with the superintendent of the insurance department." The order, as originally entered, declared that said company " is excluded from its corporate rights, privileges and franchises and dissolved."

On motion of the receiver, an order was granted modifying the original order — among other things, by striking out the words last quoted as to the dissolution of the company.

The further facts appear sufficiently in the opinion.

*William Barnes*, for appellant. Upon this appeal, the facts and law were reviewable. (4 Wait's Pr., 265; *Godfrey* v. *Moser*, 66 N. Y., 250.) The order of Special Term was erroneous, so far as it vested or attempted to vest in the receiver the title to the securities deposited with the superintendent of insurance, or so far as it attempted to dissolve the company. (*In re Guardian Mut. L. Ins. Co.*, 13 Hun, 115; *Chapman* v. *Ruggles*. 59 N. Y., 163.)

*E. W. Paige*, for respondent.

FOLGER, J. The point made by the appellant; that it should have been made to appear in detail to the Special Term, in what way and upon what evidence, the superintendent of the insurance department, came to the opinion, that the appellant was in such condition as to render its continuance in business injurious to the public interests ; is not well taken. The reasons why it is not, are well stated in the opinions in the court below, and need not be paraphrased or repeated.

The point, that the value of the policies of the defendant, should have been estimated at a gross, instead of a net valuation, is abstract, and presents nothing practical to us. There is no evidence in the record, to show what would have been

the result, if the method of gross valuation had been taken. Moreover; the experts who gave oral testimony, were divided as to which is the true method of testing the value of the policies of a life insurance company. The quotations from authors and from reports, abundantly furnished upon the appellant's points, are not the kind of matter on which to found a legal decision, which is to be based upon facts. There is nothing presented to us by the record, upon this point, from which we can say that there was error in the court below.

The question left is, did the facts presented, require the appointment of a receiver, and the stoppage of the defendant's business? Or rather; the order for a receiver having been granted, and that officer having entered upon the discharge of his duties, and taken possession of the effects of the company, and there having resulted the stoppage of its current business, the loss of its credit, and the serious impairment of its power to recuperate; the question is, was there such a total absence of any cause shown by the proofs for a judicial interference with its affairs, as that this court is called upon to reverse the proceedings already had, to arrest the process of settlement and liquidation, and start the company again, after the shock which its credit has received, and the derangement which its business has suffered. We are free to say, that on the simple knowledge of the condition of the company given by the proofs in the case, we should have deliberated for some time, before we should have taken the severe and disturbing measure, of entering into the control of the affairs of this company by putting a receiver over it. And we are not willing to assent to the position of the assistant attorney-general, that the Special Term having been satisfied from the evidence, of the propriety of such a measure, there is nought for this court to review. It is a great power which is put into the hands of the superintendent of the insurance department, and into the Special Term, that of arresting the course of these companies; and it is not to be used without great caution, and judicious consideration, lest

it become destructive, and intolerable; and it is for the General Term, and for this Court, to critically scrutinize the proceedings in every case, and determine with care, whether good cause existed for interference, and whether there is sufficient reason for continuing it.

We think that the rule which should guide in that inquiry is not completely stated in the opinion at General Term in the case of *The World Safe Insurance Company*, cited for appellant (40 Barb., 501). It is there said, that what authorizes an insurance company to commence business, authorizes it to continue; and if its funds substantially equal the amount of its capital, it should continue; so far as respects the question of the sufficiency of its funds. But it is to be borne in mind, that when it starts business, it has no obligations to burthen its capital. If, after it has begun, gone on in business, and has incurred obligations serious in amount, it has lost its capital, and then has assets no more, substantially, than was its capital, whatever obligations it after that takes, it takes in effect, as if it then started business without capital; unless we are to hold, with some of the expert authorities cited by the appellant, that it is proper and considerate, to expend the capital in building up a business; to which notion we do not accede. The better expression of the rule, is found in the opinion in this court, in the same case (see N. Y. Ins. Dept. Reps., 1863), to wit: are the assets sufficient to justify the belief, that it may continue in the business of insurance, with safety to the public?

Assets should be sufficient to continue the business of life insurance with safety to the public. Which means, that they should be enough in amount, and of such goodness, as to hold out a reasonable assurance to those seeking policies from the company, that it will be able to meet all of its liabilities as they accrued.

The proofs tended to show, we think that they did show, that the assets of the defendant were short of a sum equal to the amount of the outstanding policies, by about one-tenth of that amount; and that the capital was entirely sunk.

Besides that, some of the assets were not of a kind, readily convertible or available.

Now here was a deficit in assets of considerable amount, and such a condition of the company is exhibited, as would, when made known to the public, be likely to produce distrust, to diminish its business, both from its customers then existing, and from the community to which it would look for new applications.   Such result would further affect its financial condition, and make less hopeful an attempt to restore it to soundness.

In considering whether there was left enough to offer reasonable assurance to insurance seekers that the contracts which they would take from the defendant would be fulfilled at maturity, it was proper also to look into the past management of the company, and see whether it gave cause for a reasonable expectation of a recuperation of the resources of the company, and of such a course of future management of its affairs, as would build it up, and recover it from its losses. It is not to be denied that the proof discloses a laxness of administration.   The trustees were not in the practice of regular or formal meetings ; nor as a body, did they keep up a vigilant, regular, or casual supervision of its affairs.  · A large share of its assets was kept as a cash deposit with a private banker, without an agreement from him to pay interest, with no security from him against loss ; and he an officer of the company, chiefly instrumental in the conduct of its affairs ; without a regular vote or meeting of the board of trustees, dividends were paid to the stockholders, when according to the testimony of the secretary, it was impossible to know whether or not the capital of the company was impaired, and when there had in fact been losses, and a depreciation in the value of its assets.

This was not a mode of management, which when known was likely to beget confidence and hope.   It would not if continued promise a recovery from former adverse results. It would not create an expectation, that the remaining property of the company and its future earnings, would be saved

for the benefit of the policyholders, to the extent of a filling out of shrunken assets, and a restoration of lost capital.

When the Special Term began its consideration of the case ; (a consideration which it could not refuse after being moved thereto by the attorney-general ; in his turn obliged to act upon the report of the insurance department); much of this was bruited abroad in the newspapers, and had become generally known. In the alarmed and sensitive condition of the popular mind, upon the internal state and management of life insurance companies, it could not but be, that the disclosure of such facts would hurt the credit of the company, harm its business, and take away from its ability to serve the public. When the General Term came to act, more had been made known, and it is reasonable to suppose, with results still more disastrous ; indeed the proof discloses that fact. And so it is, now that the order has come to us for review.

It is a grievous thing for an institution carrying on such a business, to be at once stopped in it, and to be put into the hands of a receiver; grievous for its owners and quite as grievous for those who have done business with it. But it is grievous also for those holding its obligations, and would be so for those who should thereafter take them, for it to go on, if its means are not now sufficient, and if there is not reasonable expectation that they will become enough to meet its contracts with them.

The contract of life insurance to the insured is peculiar. It is not a matter to which a speedy result is looked or hoped for. It is entered into with the expectation of years of continuance. Above all things, it must be founded in confidence. Men will not seek, men will not continue in a company, whose condition and management has been shown to be questionable. And when former customers discontinue, and new ones do not take their vacant places, the business of the company is so affected that expectation of future usefulness to the public is feeble. And this is so, from the diminution of means at present, and the probability of no reno-

vating future supply. Thus the rule of this court above quoted is brought into operation, and cause is found for interference.

A consideration of the facts and circumstances of this case, leads us to the conclusion that the exercise of a sound discretion will not authorize a reversal of the action of the courts below.

The order appealed from should be affirmed so far as it appoints a receiver.

There is some objection made to parts of it, which seem to rest upon a clerical, or other like error, in the framing of it. To an amendment of it in this respect there is no resistance from the attorney-general. In that respect the order should be modified. It should not give to the receiver the securities deposited with the superintendent of the insurance department, nor should it dissolve, or attempt to dissolve the defendant corporation.

All concur, except RAPALLO, J., absent.

Ordered accordingly.