In the Matter of the Application of THE ATTORNEY-GENERAL OF THE STATE OF NEW YORK *v.* THE NORTH AMERICA LIFE INSURANCE COMPANY.

The receiver of an insolvent life insurance company, appointed under the insurance act of 1869 (§ 7, chap. 90, Laws of 1869), may file exceptions to the report of a referee appointed to take proof of claims.

The act of 1866 (chap. 576, Laws of 1866), authorizing the N. A. L. Ins. Co. to deposit with the superintendent of the insurance department a fund for the security of the registered policy-holders, is not in conflict with the provision of the State Constitution (art. 8, § 1), prohibiting the creation of corporations by special act, as it does not create, but regulates a corporation previously in existence.

The said act of 1866, and the provisions of the act of 1869, and of the act of 1867 (chap. 708, Laws of 1867), making similar provision for a special fund for the security of registered policy-holders, are not violative of the constitutional provision (art. 7, § 9), prohibiting the giving or loaning the credit of the State, "in aid of any individual, association or corporation," as the credit of the State is not given or loaned by said acts; it incurs no responsibility except as a depository.

The provisions of the said act of 1869, providing for arresting the business of a company, when its further prosecution will be injurious to the public interests, and for the appointment of a receiver, etc., are not repugnant to the provisions of the State and Federal Constitutions, prohibiting the depriving of a person of property, without due process of law.

Nor do the said provisions in reference to registration, impair the obligation of contracts then existing between a company and its policy-holders.

A receiver of said N. A. L. Ins. Co. was appointed March 8, 1877. Upon application of the Attorney-General under the act of 1853 (chap. 463, Laws of 1853), an order was granted January 16, 1877, dissolving the

corporation and continuing the receiver. The referee in computing the value of the claims, took the date of March 8, 1877, and computation was made up to that time. *Held,* no error.

The referee in computing the values of annuity bonds took as his basis the American Experience Table of Mortality (see table annexed to Insurance Act, chap. 623, Laws of 1868, p. 1317), and interest at four and one-half per cent, this being the table used by the company in selling annuities. The Special Term sustained an exception to this, holding the values should be computed according to the Northampton Table, with interest at six per cent. *Held,* that the rule adopted by the referee was correct, and the holdings of the Special Term error.

*People* v. *S. L. I. & A. Co.* (78 N. Y. 114), distinguished and limited.

The value of an annuity bond is such a sum as will purchase a similar bond in a solvent company for the remainder of the life.

The holders of running registered policies are not entitled to payment, out of the securities deposited under the Registration Acts, in preference to death claimants under registered policies.

Where, in lieu of policies upon which notes had been given, paid-up policies had been issued, containing a provision that in case interest on the notes should not be paid as agreed, the policy should become void, *held,* that the condition was not usurious; that where there had been default in payment of interest the policies were forfeited, and the referee was correct in rejecting the claim.

*It seems* that a court of equity will not relieve from such forfeitures, when the contract is free from fraud or mistake.

In lieu of certain registered policies surrendered, and in pursuance of provisions contained therein, unregistered paid-up policies had been issued; no fraud or mistake was shown. The referee decided that these paid-up policies were to be treated as if registered, and paid *pro rata* out of the fund deposited. *Held* error; that the claimants, to entitle themselves to share in this fund, should have shown sufficient to authorize a reformation of their policies, also that they had taken prompt measures on the receipt of their policies to notify the superintendent of the insurance department of their claims.

Two holders of registered policies, who were entitled by the terms thereof to paid-up policies in their stead, surrendered their policies, which were canceled, and unregistered paid-up policies were issued to them; one refused to accept and returned his policy, the other objected when his policy was tendered, but was induced to accept by the statement of the agent of the company that the record would show it to be registered, and that it would have the same force and effect as if registered. The Special Term held that these claimants were not entitled to share in the registered fund, but were entitled to a preference in the general fund for a dividend of the same amount given to the registered policies out of the special fund. Said policy-holders claimed a preference in the general fund for the full amount of their policies. *Held,* untenable.

As to whether the preference allowed by the Special Term was right, *quære*.

Holders of unregistered policies issued after January 1, 1870, claimed that their policies must be considered as registered by virtue of the provision of said act of 1869 (§ 2), declaring that any company electing to make special deposits shall do so in respect to all policies thereafter issued, etc. *Held,* untenable; that assuming the company was bound to register all of its policies, as these policies were not in fact registered, those accepting them could not claim the benefit of a fund not set apart for their security; but that the said provision was to be taken and construed with the provision (§ 11) authorizing the issuing of unregistered policies in certain cases.

The holder of an annuity bond died in November, 1878. The time for presenting claims to the receiver under the published notice expired May 20, 1879. The claim under said policy was presented before that time, but after the death of the annuitant; the party presenting it contended that the bond should be valued as of the day when the receiver was appointed (March 8, 1877). *Held,* untenable; that as when the claim was presented to the receiver it was possible to compute its precise value, this was all the claimant was entitled to.

(Submitted June 15, 1880; decided September 28, 1880.)

APPEALS by certain policy and annuity bondholders from order of the General Term of the Supreme Court in the third judicial department, affirming an order of Special Term, granted on the coming in of the report of a referee appointed to take proof of claims against defendant, The North America Life Insurance Company.

The nature of the orders and the facts appear sufficiently in the opinion.

*Raphael J. Moses, jr.* for appellants. Unregistered paid-up policies issued in lieu of registered policies should be treated as registered. (*Wells* v. *Yates*, 44 N. Y. 525; *Hay* v. *Star F. Ins. Co.*, 8 Ins. L. J. 633; 1 Pars. on Cont. 427; *Barnet* v. *Bisco*, 4 Johns. 235; *People* v. *Howell*, id. 296; *M. & B. Plank Road* v. *Snedeker*, 18 Barb. 317; *Smith* v. *Ware*, 13 Johns. 257; *De Peyster* v. *Hasbrouck*, 1 Kern. 582; *Gillespie* v. *Moon*, 2 Johns. Ch. 585; *Barlow* v. *Scott*, 24 N. Y. 40; *Rider* v. *Powell*, 28 id. 310; *Cole* v. *Brown*, 10 Paige, 534; *Bidwell* v. *Astoria Ins. Co.*, 16 N. Y. 263.) The registry act is

unconstitutional, so far as it is attempted to be applied to policies issued prior to its passage. (*Bummel* v. *Collinsville Svgs. Soc.*, 38 Com. 207; *Newark Svgs. Bk. Case*, 28 N. J. 555, 556; 15 How. [U. S.] 308; *Munner* v. *The Potomac Co.*, 8 Peters, 285; *Wood* v. *Drummond*, 3 Mason, 210; *Nevitt* v. *Bk. of Port Gibson*, 6 Meadeth, 541; *Hightower* v. *Thorton*, 8 Ga. 504; *Gunn* v. *Barry*, 15 Wall. 610.) The authorities forbid corporations to prefer one class of policy-holders to the other, nor can the State permit such preference. (Green's Brice's Ultra Vires, part 2, § 2; Bliss on Life Ins., §§ 472, 476; *Jones* v. *Terre Haute R. R. Co.*, 57 N. Y. 196; *Kent* v. *Quicksilver Mining Co.*, 12 Hun, 53, and Ct. of App., Alb. L. J., Sept. 15, 1879, p. 333; *Clevenger* v. *Mut. L. Ins. Co.*, 9 Ins. L. J. 129; *Kean* v. *Johnson*, 1 Stockt. [N. J.] 401; *Beach* v. *Del. & R. Canal Co.*, 9 C. E. Greene, 445; *Jackson* v. *Sudeling*, 21 Wall. 616; *Casserly* v. *Manners*, 48 How. 219; 9 Hun, 695; *Lathrop* v. *Stedman*, 13 Blatchf. 134.) A paid-up policy cannot be forfeited for non-payment of interest on loans made on the original policy, when by the terms of the original policy a forfeiture would not have resulted from such failure. (*Dutcher* v. *Brooklyn Life Ins. Co.*, 95 U. S. 269; *Montgomery* v. *Phœnix Ins. Co.*, 8 Ins. L. J. 303; *Martin* v. *Ætna L. Ins. Co.*, 5 Bigelow, 514; *Knickerbocker L. Ins. Co.* v. *Vashti*, 8 Ins. L. J. 349; *Hatch* v. *Phœnix Mut. Ins. Co.*, 44 Vt. 485; *Smith* v. *St. Louis Mut. L. Ins. Co.*, 2 Tenn. Ch. 742–3; *Russell* v. *St. Louis Mut. L.*, 5 Bigelow, 243; *St. Louis M. L. Ins. Co.* v. *Grigsby*, 4 id. 633; *Ohde* v. *N. W. L. Ins. Co.*, 5 id. 145; *Little* v. *N. W. M. L. Ins. Co.*, 5 Ins. L. J. C. 149; 5 Bigelow, 137.) The death of an annuitant since the appointment of the receiver may be proved so as to fix the value of the claim at the date of the receiver's appointment. (*In re Newland*, 9 N. B. R. 62.)

*William Barnes* for creditors and policy-holders, appellants. The exception that the date of January 16th, 1878, instead of March 8th, 1877, should have been fixed upon by the referee for the valuation of policies and the statement of claims against

the company, was properly overruled. (*In re Albert L. Ass. Co.* [Cook's Policy]; Law Rep., Eq. Ca., vol. IX, 703.) Chapter 902 of the Laws of 1869 is not unconstitutional and void in allowing deposits to be made in the insurance department for the special protection of registered policy-holders. (*Matter of De Vancene,* 31 How. Pr. 289, 343; *Embury* v. *Connor,* 3 N. Y. 511; *Sherman* v. *McKeon,* 38 id. 266; *Delaney* v. *Pratt,* 51 id. 81; *Frees* v. *Ford,* 6 id. 177, 178; *Macomber* v. *Mayor,* 17 Abb. Pr. 39; *Peo. ex rel. Wetmore* v. *Board of Supervisors,* 2 Keyes, 291; 4 Wait's Pr. 232.) The annuity bond of Count Potocki was properly valued at $3,482.96, instead of $15,773.43, the annuitant having died after the appointment of the receiver. (*Holdrich's Case,* Law Rep., Eq. Cas., vol. XIV, 83.) The valuation of the outstanding annuity obligations of the company by the Northampton Table at six per cent interest instead of the American Experience Table of Mortality, at four and a half per cent interest, is correct. (Paper on an uniform standard of mortality and interest, by William Barnes, pamphlet, p. 71; *Attorney-General* v. *Security L. I. & Ann. Co.,* Daily Register, Oct. 13, 1879.) The clause in the policies of the company which attempted to forfeit the rights of the policy-holders for the non-payment of annual or other interest on its premium or other loans, was unauthorized by its charter, and if so authorized, is an agreement against public policy, and a mere penalty, and not a condition precedent; and such a provision is also usurious, inoperative and void. (*St. Louis M. L. Ins. Co.* v. *Grigsby,* 10 Bush [Ky.], 310, 315; *Ohde* v. *N. W. Mut. L. Ins. Co.,* 5 Bigelow, 145; *Little* v. *Same,* id. 137; *Montgomery* v. *Phœnix M. L. Ins. Co.,* 8 Ins. L. J. 300, 309; *Brooklyn Ins. Co.* v. *Dutcher,* 95 U. S. 272, 269; 1 Story's Eq. Jur. 350; *James* v. *Morgan,* 1 Lev. 111; 2 Ves. 155; 1 Atk. 321, 351; *Whalley* v. *Whalley,* 3 Bligh, 1.) The referee was correct in allowing paid-up unregistered policies to share *pro rata* in the special fund when issued in lieu or in continuation of original registered policies, where the proofs showed that the original registered policy did not provide that in case of demanding a paid-up policy the holder should only

receive an unregistered paid-up policy. (*Ins. Co.* v. *Eggleston*, 96 U. S. 572; Wharton's Law Lexicon, 412; 28 N. J. Eq. 556; *Wells* v. *Yates*, 44 N. Y. 529, 530, 531; *Hay* v. *Star F. Ins. Co.*, 8 Ins. L. J.; *Martin* v. *Ætna L. Ins. Co.* 5 Bigelow's Life & Acc. 514c.–523; Tenn. 9 Heisk.)

*Lucius McAdam* for appellants, Morgan and Simpson. The policy-holders had a right to assume that they would receive the kind of policy which they had contracted for and for which they had paid their money. (*Studwell* v. *Terrett*, 4 Bosw. 520; *Martin* v. *Ætna Life*, 5 Big. 514.) They also had a right to assume that whatever form such paid-up policies took, the insurance superintendent, under his trust, would hold the funds registered on their account, so long as the liability to them had not been fully liquidated, canceled or annulled, as required by the act of 1869. (1 R. S. [Edm.] 680, § 65; *Sheppard* v. *McEvers*, 4 Johns. Ch. 136; *Smith* v. *Bowen*, 35 N. Y. 83.) These policy-holders supposed that the policies were registered as the former ones had been, and if they were in error, it was a mistake of fact on their part and a fraud upon the part of the company, entitling them to a reformation of the contracts, so as to restore them to the condition of registered policies. (*Wells* v. *Yates*, 44 N. Y. 525; *N. Y. Ice Co.* v. *N. W. Ins. Co.*, 23 id. 357; *Hoy* v. *Star F. Ins. Co.*, Alb. L. J. [June 14, 1879] 477; *Whittemore* v. *Farrington*, id. [June 7] 459; Cowen's Treatise, 56, 57, §§ 76–79; *Hill* v. *Gray*, 1 Stark, 434; May on Insurance, 716; *Home Ins. Co.* v. *Heck*, 2 Ins. L. J. 439; *Martin* v. *Ætna Life*, 5 Big. 520–1; *People* v. *Atlantic Life*, 74 N. Y. 182; *Botsford* v. *McLean*, 45 Barb. 478.) The registered fund was a trust fund for the benefit of all registered policies. (*Wells* v. *Wallace*, 2 Redf. 58; *Barnes* v. *Camack*, 1 Barb. 392.) The order appointing the receiver did not dissolve the company. (*In re Att'y-Gen.* v. *Atlantic L. Ins. Co.*, 74 N. Y. 183.) A corporation can only be dissolved by a judicial sentence, actually declared in some proceeding instituted for that purpose. (*Mickles* v. *Rochester Bank*, 11 Paige, 118; *N. Y. Marbled Iron Works*

*v. Smith*, 4 Duer, 362; *People* v. *Manhattan Co.*, 9 Wend. 351; *Ex parte Ref. Pres. Church*, 7 How. Pr. 476.) Distribution can only be made under the second decree. (*Angell* v. *Silsbury*, 19 How. Pr. 48; 2 R. S., part 3, chap. 8, title 4, §§ 37, 48, 79.) The debts and claims are to be estimated, according to the value thereof, at the date of the order to wind up the company. (*Holdrich's Case*, 3 Big. L. Ins. R. 278; *S. C.*, Eng. L. R., 14 Eq. Cas. 72; *In re Albert Life*, Eng. L. R. 9; Eq. Cas. 703, 706; 3 Insur. Cyclopædia, 61; Potter on Corporations, 845–847; *Kincaid* v. *Dwinelle*, 59 N. Y. 548.)

*William P. Chambers* for assignees of Potocki, appellants. The referee erred in his valuation of the annuity, the status of both parties to the contract being fixed on the day of its breach, viz., the day the receiver was appointed. (*People* v. *Security L. Ins. and An. Co.*, N. Y. Reg., Oct. 13, 1879.) The right to damages as they existed on the day the receiver was appointed included the right to have them assessed by the means which existed on that day. (*Lancaster's Case*, Albert Arbitration, 88; *In re Albert L. As. A.*, L. R., 9 Eq. 720.)

*Thomas S. Moore* for registered policy-holders appellants. The fund accumulated under chapter 902 of the Laws of 1869 in the hands of the superintendent of the insurance department is applicable only to pay the registered policies. (Notes on L. Ins. by G. W. Smith, 40; Prin. and Pr. of L. Ins. of Willey [Goodsell, N. Y. 1872], 82.)

*Thomas S. Moore* for holders of registered annuity bonds appellants. The life policy and annuity bonds should be valued by the same standard. (*Albert Arbitration*, L. R., 14 Eq. 72, 77, note.)

*Lucius McAdam* for Edward Lampe, appellant. The act of 1869, chapter 902, violates the Constitution of the United States and the Constitution of the State of New York, in that

its provisions deprive life insurance companies of their property without due process of law. (U. S. Const. Amendments, art. 5; N. Y. Const., art. 1, § 6; *In re Atlantic M. L. Ins. Co.*, N. Y. Ins. Rep. 1879, p. 222; *In re Atlantic L. Ins. Co.*, 55 How. Pr. 80; *S. C.*, 56 id. 393; *S. C.*, 15 Hun, 84; 53 How. Pr. 227, 300; 74 N. Y. 177; *Gebhard* v. *Canada South. Ry.*, 21 Alb. L. J. 352; *Sweet* v. *Hurbert*, 51 Barb. 312; *De Hart* v. *Hatch*, 3 Hun, 375; 2 Potter on Corporations, 838, § 711; *Hoppy* v. *Mosher*, 48 N. Y. 313; *Rockwell* v. *Nearing*, 35 id. 302; *Gunn* v. *Barry*, 15 Wall. 61; Cooley's Const. Lim. 289.) The registration acts are in violation of the Constitution of the United States and of the Constitution of the State of New York, in that they affected the charter of the company to the prejudice of its members, and impaired the obligation of the contract between the State and the company. (U. S. Const., art. 1, § 10; N. Y. Const., art. 1, § 18; id., art. 3, § 16; Charter, art. 3, § 1; *Clevenger* v. *Mut. L. Ins. Co.*, Ins. L. J., Feb. 1880, p. 137; Potter on Corporations, 59, 133, 135, 675; *Terrett* v. *Taylor*, 9 Cranch, 43; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Martin* v. *Somerville W. P. Co.*, 27 How. [U. S.] 161; *S. C.*, 3 Wall. Jr. C. C. 206; *Lathrop* v. *Stedman*, 13 Blatchf. 143; 1 Potter on Corporations, 62; *People* v. *Morris*, 13 Wend. 328; *Commonwealth* v. *Essex Co.*, 13 Gray, 239, 253; *Baltimore* v. *Connellsville R. R.*, 13 Am. L. R. 750; *Zabriskie* v. *Hackensack R. R.*, 18 N. J. Eq. 178; *Allen* v. *McKeen*, 1 Sumn. 276.) The registration acts impaired the obligation of the contracts between the company and its members contained in the policies issued to such members. (1 Potter on Corporations, 131; Laws 1869, chap. 902, §§ 3, 4; 2 Story on Constitution, § 1385; *Green* v. *Biddle*, 8 Wheat. 84; *Lathrop* v. *Stedman*, 13 Blatchf. 143; *Tyson* v. *Va. & Tenn. R. R. Co.*, 4 Am. L. R. 223; *Kent* v. *Quicksilver Mining Co.*, 12 Hun, 59; *S. C.*, 20 Alb. L. J. 333; *Dartmouth College Case*, 4 Wheat. 518; *Vt. & Can. R. R.* v. *Vt. Cent. R. R.*, 34 Vt. 150; *Jones* v. *Terre Haute & Rich. R. R. Co.*, 57 N. Y. 196.)

*William and Augustus Van Wyck* for Gotlieb Siegert *et al.*, appellants. The order should be affirmed wherein it directs running annuity bonds to be estimated according to the Northampton six per cent table. (*People* v. *Security L. Ins. Co.*, Daily Register, Oct. 13, 1879.) The value of the Potocki annuity was correctly estimated and the order should be affirmed. (*People* v. *Security L. Ins. Co.*, Daily Register, Oct. 13, 1879.) The appointment of the receiver of this corporation's assets, under provisions of Law 1869, chapter 902, was due process of law and not in conflict with article 1, section 6, Constitution. (*In re Atlantic L. Ins. Co.*, 74 N. Y. 177; *S. C.*, 55 How. Pr. 80; 53 id. 227; 15 Hun, 84.)

*R. W. Peckham* for H. R. Pierson, receiver, respondent. The act of 1869 (chap. 902) in regard to registered policies is constitutional. (Const., art. 8, § 1; id., art. 7, § 9; U. S. Const. Amendment, 5; N. Y. Const., art. 1, §§ 6, 18; U. S. Const., art. 1, § 10; *People* v. *Rochester City*, 50 N. Y. 525.) The funds withdrawn from the insurance department came into the general assets of the company, and having been mingled with its other funds and used to pay obligations maturing from day to day cannot be followed because they cannot be identified. (*Butler* v. *Virolet*, 66 N. Y. 392; *Ferris* v. *Van Vechten*, 73 id. 113.)

*Wm. D. Whiting* for Catharine S. Ashbridge *et al.*, policy-holders, respondents. A party may waive the unconstitutionality of an act. (*Lee* v. *Tillotson*, 24 Wend. 337.) It was unnecessary that the first registration act to operate as an amendment of the company's charter should specify that it was an amendment of the charter or of the general law of 1853. (*People* v. *Briggs*, 50 N. Y. 553; Const. 1846, art. 8, § 1.) It was competent for the company to have agreed with all new policy-holders after a certain date to give them collateral security for the fulfillment of their contracts. (*Jarvis* v. *Smith*, 7 Abb. [N. S.] 217; *Sec. L. Ins. Co.*, 8 Ins. L. J. 859.) The registration acts do not impair the obligation of the prior policy

contracts which agree merely to pay a certain amount at the death of an individual on life policies or at a certain date upon endowment policies. (*McCormick* v. *Pickering*, 4 N. Y. 276; *Morse* v. *Gould*, 11 id. 281.) The legislature have a discretion as to making special laws which cannot be inquired into by the courts. (Const., art. 8, § 1; *People* v. *Bowen*, 21 N. Y. 517; *U. S. Trust Co.* v. *Brady*, 20 Barb. 119.)

EARL, J. The North America Life Insurance Company was incorporated in 1862, and continued business until March 8, 1877. For several years before the last date, it had issued registered policies and annuity bonds, under the acts chapter 576 of the Laws of 1866, chapter 708 of the Laws of 1867, and chapter 902 of the Laws of 1869. At that date, a receiver of the company was appointed, under section 7 of the act of 1869, and by him an actuary was subsequently appointed, under section 8, who investigated the affairs of the company and reported that it was insolvent, within the meaning of that section. The receiver proceeded to wind up the company. Notices were published and served requiring creditors to present their claims within a time specified, and a referee was appointed to take proof of the claims and report the same to the court. Many claims were presented to such referee, and, after hearing such of the claimants as desired to be heard, he made his report, which was filed. Many exceptions were taken thereto by the receiver and the claimants. The exceptions were all overruled, but two, at the Special Term, and the report was confirmed, except as modified by sustaining the two exceptions. Several of the claimants appealed to the General Term of the Supreme Court, and from affirmance there to this court.

So many questions are presented by the various appeals that a brief discussion of them here must suffice.

Objection is made here that some of the exceptions to the report of the referee were not filed within the time allowed by the rules of the Supreme Court. It is sufficient to say that this fact is not shown by the record as printed, and that the

objection does not appear to have been taken at Special Term. It is a mere matter of practice, which should have been disposed of there.

It is also objected that the receiver had no right to file any exceptions to the report of the referee, as the controversies before the referee were solely between the several claimants upon the assets of the company. The receiver represents the company not only, but he stands as a trustee of its funds for all its creditors. He is supposed to be impartial between the several claimants upon the funds, and yet he may intervene to see that no injustice is done to any one, and that the funds are properly protected, disposed of and administered. (*Bockes* v. *Hathorn,* 78 N. Y. 222.) In such cases, the claimants do not all usually appear before the referee by counsel. They may choose to rely upon the protection the receiver, as their trustee, will give them; and that he may afford them such protection, he may appear before the referee, file exceptions to his report, and appeal from any order or decree, made at any stage of the proceedings, affecting the funds in his charge.

First: There were registered and non-registered policy-holders in this company, and the claim is made, on behalf of one of the non-registered policy-holders, that the three acts above referred to, so far as they provide for a special fund for the security of registered policy-holders, were unconstitutional, and that, therefore, all the funds of this company should be combined into one fund in which all the creditors of the company should share *pro rata.* It is contended that the act of 1866 is in conflict with section 1 of article 8 of the State Constitution, which provides that "corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the objects of the corporation cannot be attained under general laws." The plain answer to this contention is, that the act did not create a corporation, but simply regulated a corporation previously in existence.

It is also contended that all the acts were in conflict with section 9 of article 7 of the Constitution, which provides that

" the credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual, association or corporation." The answer to this contention is that the credit of the State was not given or loaned by these acts. It simply became the custodian of the securities deposited with it. It incurred or assumed no responsibility, except as a depositary. Its responsibility was just like that assumed by the State under the Safety Fund Acts (1 R. S. [2d ed.] 606), and under the General Banking Law of 1838 (chap. 260), and under the General Insurance Law of 1853 (chap. 463) which requires a deposit with the Comptroller of securities to the amount of $100,000. It was never before supposed that the constitutional provision cited was intended to prohibit the assumption by the State of the responsibility imposed by such acts.

It is further contended that the act of 1869 violates both the State and Federal Constitutions, in that its provisions deprive life insurance companies of their property without due process of law. This is plainly not so. Section 7 of that act provides that if at any time the affairs of any life insurance company which has deposited securities under the act shall, in the opinion of the superintendent of the insurance department, appear in such a condition as to render the issuing of additional policies and annuity bonds by such company injurious to the public interest, the superintendent shall report that fact to the Attorney-General, whose duty it shall then be to apply to the Supreme Court for an order requiring the company to show cause why its business should not be closed. The court must, thereupon, proceed to hear the allegations and proofs of the respective parties, and, in case it shall appear to the satisfaction of the court that the assets and funds of the company are not sufficient to justify the further continuance of the business of insuring lives, granting annuities and incurring new obligations, as authorized by its charter, then the court must issue an order enjoining and restraining the company from the further prosecution of its business, and appoint a receiver of all the assets and credits of the company. The legislature had the right to alter or repeal any law under which these com-

panies were organized, and thus prescribe the conditions upon which their existence could be continued or terminated. It could terminate the existence of every insurance company in this State, without violating any constitutional provision. What it did in this act was to provide a way for arresting the operations of any insurance company when its condition became such that its continuance in business would be detrimental to the interests of the public. The methods provided are not arbitrary. There is first the judgment of the superintendent, and then a hearing before the court, subject to a right of final appeal to this court. (*In re Atlantic Life Ins. Co.,* 74 N. Y. 177.) If the court shall determine that the company ought not to continue business for the reasons stated in the act, a receiver must be appointed for the purpose of administering its assets. That is the orderly way generally adopted for winding up the affairs of corporations which go into liquidation. The corporation, in such case, is, in no proper sense, deprived of its property. That is taken for the payment of its debts and distribution among those who are entitled to the same. Section 8 provides that the receiver shall at once appoint an actuary, who shall investigate the affairs of the company and make his report to the court and to the receiver, and if he shall find that the securities deposited by the company in the insurance department, and the assets and credits, including future premiums on outstanding policies and other obligations, are sufficient, under the laws of this State, to pay all the policies, annuities and other obligations of the company, as they mature by the terms thereof, and the legal costs and expenses, and if his report shall be confirmed by the court, then the receiver may continue to receive premiums and payments upon the policies and other obligations of the company, thus carrying them to maturity, or he may, under the direction of the court, reinsure in some other company all the outstanding risks. It is complained that a company may thus be solvent, and yet its business may be arrested. That is undoubtedly so. The management, credit and condition of a life insurance company, although solvent, may be such that it might be injurious to the

public interest to permit it to continue its business. But it does not necessarily follow that a company must be wound up notwithstanding it shall appear upon the report of the actuary that it is perfectly solvent. If the court shall, after the appointment of a receiver, become satisfied that he was improvidently appointed, under a mistake as to the true condition of the company, and that the company is abundantly solvent, and can with safety and propriety be permitted to resume and continue its business, its power to vacate the order appointing the receiver, and to discharge the receivership, cannot be doubted; and in such event, the appointment of the actuary, and his proceedings, which depend upon the receivership, will not be permitted to stand in the way. If, however, — as was the case here — the report of the actuary shall show the company to be insolvent, there certainly can be no well-founded claim that the proceedings provided by the statute are unusual, arbitrary, violative of any fundamental principle of justice, or that there is the absence of that due process of law which has always been usual in such cases.

The claim is also made that the Registration Acts impaired the obligation of the contracts between the company and its members, contained in the policies issued to such members. But it is clear that the obligations of the company were in no way intefered with or impaired. The company remained liable to discharge all its obligations just as it made them, and precisely according to their terms. The holders of non-registered policies had no lien upon the property of this company at the time of the passage of these acts, and they were therefore deprived of no lien. Laws abolishing imprisonment for debt and distress for rent, and increasing the amount of property exempt from execution, have been held not to impair the obligation of contracts previously existing. Laws could be passed giving servants a preference of payment in all cases out of the estates of their employers, without impairing the obligation of other contracts entered into with such employers. So the legislature could, for reasons of public policy and justice, give classes of creditors preference over other classes, so

long as creditors not preferred were left with substantial remedies. Here the holders of registered policies were given a preference of payment upon a fund substantially created with money contributed by them. The special fund created for their benefit could never, in the ordinary management of a company, be greater than the money contributed by such policy-holders, and it seems to me quite absurd to say that a provision that they should have payment out of such fund in preference to other policy-holders, violated the obligation of any contract within the meaning of the Constitution. A debtor does not violate the obligation of his contracts with other creditors by pledging to a class of his creditors a portion or all of his property, for the purpose of securing their claims; and the same must be true of an insurance company which sets apart a portion of its assets in pursuance of law, for the purpose of securing a certain class of its creditors.

Without further elaboration, I conclude that the objections to the Registration Acts on constitutional grounds are without any foundation.

Second. The receiver in this case was appointed March 8, 1877, under the act of 1869. That act contained no provision for a dissolution of the corporation, and hence there was a further application to the court by the Attorney-General in December, 1877, under the act of 1853, for an order dissolving the corporation; and upon such application an order was made January 16, 1878, continuing the receiver and dissolving the corporation. The referee, in allowing the claims, took the date of March 8th as the time in reference to which the value of all claims should be computed. It is claimed that he should have taken the date of January 16th. I think the referee was right. The business of this company was arrested on March 8th, and its assets were then put into the hands of a receiver for administration, under the act of 1869. The company could never, thereafter, do any business, and was practically, though not technically, dissolved.

Third. In computing the value of certain annuity bonds issued by this company, the referee took as his basis the Ameri-

can Experience Table of Mortality, found in the Session Laws of 1868, at page 1317, and interest at four and one-half per cent. Exception was taken to this on the part of some of the claimants, and the Special Term sustained the exception, holding that the values of such bonds should be computed according to the Northampton Table, with interest at six per cent. The learned judge at Special Term was influenced, if not controlled by the decision of this court in the case of *The People* v. *Security Life Insurance and Annuity Company* (78 N. Y. 114). It is true that in that case it was held that in computing the values of the annuities then in question, the Northampton Table, with interest at six per cent, should be used. The facts in that case were not as fully developed as they have been in this, and the question was not as fully argued there as it has been here; and whether that case was correctly decided or not, upon the case as it was then presented to the court, my convictions are very strong that it should not control us now. These annuity bonds were issued by a company doing an annuity business, and were purchased by persons who preferred annual payments for life rather than a gross sum in hand. The purchasers of these bonds each paid not only such a sum as would be sufficient, drawing some rate of interest, to pay the annuity for the term expected, but also an additional sum, which in insurance business is called the loading to pay for expenses of the company and contingencies. The purchasers of the annuities did not wish to be at the trouble, risk and expense of managing a gross sum so as to produce the annuities, and hence paid the company for assuming that trouble, risk and expense; and hence, if the annuitants now received of the company only the present value of the future annual payments for the term expected, they will not get a proper proportion of the purchase-money paid. Upon such a basis, the whole of the loading, although not earned by the company, will remain with it; and an annuitant receiving the present value of the annual payments, if he should desire to purchase another annuity, would again be obliged to pay for the "loading," and thus would not be able, with the gross

sum received, to purchase an annuity for the remainder of his life.

The true rule, it seems to me, to measure the value of such annuities, is to take such a sum as will, for the remainder of the life of the annuitant, purchase an annuity for the same amount. In the case of running policies in insolvent companies, we have held that the amount of damage to a policy-holder is the value of the policy destroyed, and that such value is the sum which, together with the same future premiums, will procure another policy in a solvent company. So the value of an annuity bond, binding the company to make certain annual payments during life, is such a sum as will purchase a similar bond in another solvent company for the remainder of life. Nothing short of that will give the party whose bond is destroyed full indemnity.

Insurance companies doing an annuity business and a life insurance business must conduct both kinds of business upon the same principles. In the one case, a party makes certain annual payments for a gross sum to be paid at the end of life. In the other case he pays a gross sum for annual payments to be made to him for life. A party pays $100 per year for $3,-000 to be paid at his death, or he pays $3,000 for $100 to be paid to him annually for life. Thus, in the case of an annuity the process of insurance is inverted, and there is abundant reason for claiming that the same fundamental principles must govern in conducting the two kinds of business, and in estimating the values of the two kinds of contracts.

It would do exact justice between an annuitant and the company now, to compute the value of his annuity by the same table which was used when he purchased the annuity. It would not be just to take a basis of six per cent interest now, when a basis of four or four and a half per cent, requiring a larger gross sum, was used in the purchase.

It was proved before the referee that the Northampton Table, with six per cent interest, was not used by this company, or any other doing an annuity business, and that the American Experience Table, and Carlisle and Actuaries' Tables, were

used by this and other companies. It was also proved that no life insurance company could with safety agree to pay an annuity on the basis of six per cent interest; that it would take a less sum to purchase an annuity on a basis of six per cent interest than on a basis of four and a half per cent; and that the difference, at the age of twenty-five, would be about twenty per cent, and at the age of seventy-five, about five per cent.

Besides all this, the American Experience Table is required, by the act chapter 623 of the Laws of 1868, to be used by the superintendent of the insurance department in valuing all the outstanding policies and other obligations of insurance companies; and the same standard for computing values is required to be used under sections 4 and 8 of the act of 1869.

Therefore the annuitants may justly claim that the sums awarded to them, by taking the Northampton Table and interest at six per cent, are too small; and I think the referee was right in his basis for calculating the values. The reasons for discarding, in such cases, the Northampton Table at six per cent are much stronger now than formerly, since the rate of interest has by law been reduced to six per cent, and by practice generally below that sum for permanent loans.

Fourth. It is claimed on behalf of some of the holders of running registered policies, that they are entitled to payment out of the securities deposited under the Registration Acts, in preference to the death-claimants under registered policies; and this claim they base upon the language used in the act of 1869. I have carefully considered all that has been said in favor of this claim, and am clearly of opinion that it is unfounded. The reasons given by the learned referee in his report, for rejecting this claim, are so full and satisfactory that nothing need now be added.

Fifth. There were cases where paid-up policies were issued in lieu of other policies, upon which notes had been given for portions of the annual premiums; and such paid-up policies contained a provision that in case the interest should not be paid as agreed, upon any note thus given, the policy should

become void, and the company should not be liable for the payment of the sum assured, or any part thereof. There were some cases where the interest upon such notes had not been paid; and in such cases the referee held that there could be no valid claim upon the policy; and in this it is now claimed that he erred.

It is contended that this provision as to payment of interest is oppressive, unconscionable and usurious, and that a case of forfeiture is presented against which a court of equity should relieve.

It was the contract between the parties that these policies should be carried only so long as interest should be promptly paid upon the notes; and if not paid, that the company should cease to be liable. There was no fraud or mistake in issuing or accepting the policies, and we must assume here that the contract was fully understood by the parties. The provision is not an unusual one. Similar provisions are quite common in insurance policies. If every condition in an insurance policy upon which its validity is made to depend is not performed, its invalidity can be asserted. Here was an insurance company doing business throughout the country. Prompt payment of its obligations was deemed important to it. If premiums to such an insurance company are not promptly paid, it may be agreed that the policy may be forfeited. If notes be taken for premiums, payable at a definite time, the policy may be avoided for non-payment. If notes be taken which are to run to the maturity of the policy and then be adjusted, the policy may be avoided for the non-payment of interest. All these cases stand upon the same footing, and a court of equity can, upon principle, no more relieve against a forfeiture in one of them than in either of the others. The case of these claimants may be treated as if the interest represented premiums to be paid during the running of the policies; and if technically premiums, no one would doubt that the policies could be forfeited for non-payment at the precise day stipulated. Such contracts are no more unconscionable or oppressive than subscriptions to stock, upon condition that the stock shall be forfeited for non-

payment of calls. In such cases a large amount of stock may be forfeited for non-payment of the last call, and that a small one, and yet a court of equity would not relieve against the forfeiture. (*Sparks* v. *Proprietors of Liverpool Water Works*, 13 Ves. 429; *Prendergast* v. *Turton*, 1 Y. & C. [New Rep.] 98, 110–112.)

There is much authority sustaining the decision of the referee. (*Anderson* v. *St. Louis Mut. L. Ins. Co.*, 5 Bigelow, 527; *Martin* v. *Ætna Life Ins. Co.*, id. 514; *Patch* v. *Phœnix Mut. Life Ins. Co.*, 44 Vt. 481; *Knickerbocker Life Ins. Co.* v. *Harlan*, 8 Ins. L. J. 349; *Nettleton* v. *St. Louis Life Ins. Co.*, 6 id. 426; *Smith* v. *St. Louis Mut. Life Ins. Co.*, 2 Tenn. Ch. 742.)

It is claimed that there is usury, because in addition to the seven per cent upon the notes, the forfeiture is also exacted in case of non-payment of interest. But the policy is not affected by any usury, because it is not a contract for the loan or for borrowing of any money. Even the note would not be usurious if it contained a stipulation that the policy should be forfeited by default in payment of the interest; because the maker of the note could avoid the forfeiture by payment of the interest. (*Burton's Case*, 3 Coke, 69.) In 2 Pars. on Cont. 393, it is said: "An agreement to pay more than interest, by way of penalty for not paying the debt, is not usurious, because the debtor may relieve himself by paying the debt with lawful interest."

There are doubtless some decided cases which hold that such forfeitures should not be enforced, but I think the better rule is to uphold and enforce such contracts, when free from fraud or mistake, just as the parties have made them. The parties entering into such contracts know best the importance of their exact and literal performance. If the makers of these notes could defer payment for a day or a month, they could do so for the whole term of the policies, and thus the company might be deprived of a considerable part of its revenue. It will not do to assume, in such cases, that interest upon deferred payments will be an adequate compensation to the company for the loss and embarrassment occasioned.

Sixth. There were certain paid-up unregistered policies issued in lieu of registered policies surrendered. These policies were issued in pursuance of provisions contained in the surrendered policies. The latter policies, in these cases, contained no provisions specifying what kind of paid-up policies should be issued upon their surrender, whether registered or unregistered. The holders of these unregistered paid-up policies claimed before the referee that their policies should be treated as if registered, and paid out of the special fund *pro rata* with registered policies, and the referee so decided. Exception was taken to this decision and was sustained at Special Term. I am of opinion that the exception was properly sustained. The special fund was provided only for holders of registered policies and annuity bonds. Even if the holders of these unregistered policies could have claimed registered policies, they did not do so. They took unregistered policies, and there was no proof, and no finding by the referee, that they were induced to take them by any fraud or mistake. They should, at least, have made a case showing enough for the reformation of their policies; and this they did not do. They should, in addition to fraud or mistake, have shown that they took prompt measures, upon the receipt of their policies, to notify the superintendent of the insurance department, and to have their policies registered, so that, under sections 4 and 5 of the act of 1869, the special fund for registered policy-holders might be kept full or be replenished.

Hence, for reasons stated in the opinion pronounced at Special Term, they must share the fate of other holders of unregistered policies.

Seventh. There are two cases where registered policies had been issued, and the holders thereof were entitled by the terms thereof to paid-up policies in their stead. They surrendered their policies, which were canceled, and unregistered paid-up policies were issued to them. One of the parties refused the policy thus sent, and returned it, on the ground that it was not a registered policy. The other objected to the policy when tendered, on the same ground, and the agents of the company,

to induce its acceptance, assured the party that the record would show that it was registered, and that it would have the same force and effect as if registered. These parties claimed the benefit of the registered fund, but the court at Special Term decided that they could not share in that fund, probably on the ground that there was nothing in it representing these policies, as the original registered policies had been canceled, but it decided that they should have a preference in the general fund for a dividend of the same amount given to the registered policies out of the special fund. The result is that these parties obtain as large a dividend as they would have received if their policies had been properly registered. They now claim that their policies should have had a preference in the general fund for their full amount. The theory upon which they base this claim is that the special fund was a trust fund for the benefit of the holders of registered policies, and that the portion of that fund which was withdrawn when their registered policies were canceled represented their interest in such trust fund, which they can follow into the general fund, and there seize to pay the value of their policies. There are two difficulties with this theory : It does not appear how much of the trust fund was withdrawn upon the cancellation of these policies, and it does not appear what became of the funds thus withdrawn. It may or may not now be in the general fund, or there represented by any property. It may have been lost, embezzled or paid out. (*Butler* v. *Sprague*, 66 N. Y. 392; *Ferris* v. *Van Vechten*, 73 id. 113.) The decision was, therefore, sufficiently favorable to these claimants, and this is said without determining whether the Special Term was right in the preference allowed.

Eighth. It is claimed, by some of the holders of unregistered policies, issued after January 1, 1870, that their policies must be regarded as registered by virtue of the statute. This claim is based upon section 2 of the act of 1869, which provides " that any company hereafter electing to make special deposits, as authorized by this act, shall do so in respect to all policies thereafter issued, and not a portion of them only, but any

company which has already made such election shall not be required to make special deposits for all its policies, until after the first day of January, 1870." If we should assume that this company was bound by law to register all its policies, it would not aid these claimants. Their policies were not, in fact, registered, and nothing was put into the special fund in reference to them. The fund was created for the security of the registered policies; and if the company violated its charter in not registering all the policies, and thus securing them all, the government could have dealt with them for such violation. A party who took an unregistered policy, and claimed no other, cannot claim the benefit of a fund not set apart for his security. But all the sections of this act must be construed together; and section 2 may be found to be limited by section 11, which provides as follows: " Any life insurance company which, by virtue of any law, is making deposit of securities and receiving registered policies, shall, after the passage of this act, make such deposit and receive such policies in accordance with this act, and not otherwise; and such company shall be authorized to issue policies and annuity bonds, only such as shall be registered under this act, except such other as in this section provided, and shall, whenever required by the holders of its unregistered policies and annuity bonds, issued previous to the passage of this act, upon their compliance with the terms and conditions of such company for registered policies and annuity bonds, issue to them respectively registered policies and annuity bonds, in exchange for and in value equal to those previously issued to them. Provided that any company availing itself of the provisions of this act may issue unregistered policies and annuity bonds, as heretofore authorized by its charter, but subject to the provisions of section 8 of this act in relation to the distribution of its assets." Sections 2 and 11, when read together, are found to be singularly confused and uncertain; but I cannot resist the conclusion that a company which, like this, was previously authorized by its charter to issue unregistered policies, could continue to do so.

Ninth. In January, 1874, Count Potocki purchased of this

company for the consideration of 100,000 francs an annuity of 18,388 francs, payable on each 22d day of December thereafter during the remainder of his life. This annuity was paid in the years 1874, 1875 and 1876. The receiver was appointed March 8, 1877, and Potocki died November 26, 1878. If this annuity had been valued on the day when the receiver was appointed, by the table and with the rate of interest taken by the referee, it would have been valued at $15,773.43; and the party representing the claim now contends that it should have been thus valued, notwithstanding the subsequent death. This contention is not well founded. The time for presenting claims to the receiver, under the published notice, ended May 20, 1879; and before that this claim was presented to the receiver. If the annuitant had not died, the probable number of years which he would live, according to the table of life expectancy adopted, would have been taken as a basis of computation. That basis might have given more or less than the actual value of the annuity bond. The result reached by such a computation would have been only approximately accurate. But before the claim came before the referee, the annuitant died and it was possible to compute the precise value of the bond, and that was $3,482.96. If the company had not broken its contract by going into liquidation, that would have been the precise sum which it would have been obliged to pay. Its failure certainly did not increase the damage, or the value of the bond. The referee was, therefore, right in applying to this case the principles laid down in the case of *The People* v. *The Security Life Ins. and An. Co.*, *supra*.

I have now examined all the questions brought to our attention by these appeals, and reach the conclusion that the order appealed from must be modified so as to require the values of annuity bonds to be computed by the American Experience Table, with interest at four and one-half per cent, and, as thus modified, affirmed; costs of the receiver, and of annuitants who appealed to this court and have succeeded in procuring a modification of the order appealed from, to be paid out of the fund.

All concur, except RAPALLO, J., absent.

Ordered accordingly.