Barnard, P. J.
The plaintiff’s husband became a member of defendant’s association on the 2d of March, 1881, and obtained its certificate that he was a sixth degree contributor to the benefit fund of the order. The company, in consideration of the performance by the husband of the rules of the order, agreed to pay the plaintiff, who was his wife, the sum of $5,000 after his death. The husband regularly paid all dues, fines and assessments until September 24, 1884. The case shows that an assessment, No. J4, was called for on the 15th of August, 1885, and by the laws of the order, payment was called for within forty days from that date. On the 15th of September, 1885, the husband became insane and wandered from home, and was found at Corning, N. Y., on the 29th of September, 1885, and he never recovered his reason, and he died in July, 1886. After his return the wife first became informed of the existence of the assessment Í4, and at once, in October, 1885, paid to the local office of the defendant the assessment. This officer received the money “on protest.” The main company is located in Massachusetts, and local sub-councils exist in various places when organized, one being at Port Jervis, where the deceased and his wife lived.
The question is, whether this policy or certificate is good in the hands of the plaintiff. The evidence shows by the rules of the defendant “any member faffing to pay such assessment within forty days shall stand suspended from the order and all benefits therefrom.” It is well settled law that non-payment of the premium secured to be paid by the fife policy on the day on which it falls due will void the policy if by the terms of the policy it is so agreed. Attorney-General, etc., v. N. A. Life Ins. Co., 82 N. Y., 190; People v. Knickerbocker Life Ins. Co., 103 id., 480.
Neither sudden illness or insanity will excuse the performance of the exact requirements of the contract. Is forfeiture absolute ? If it is, there is no remedy. The determination of this question requires a statement of the position of the parties under the rules of the association. The defendant is a Massachusetts corporation, located at Boston. It is a part of its policy to have local councils when a sufficient number of persons are willing to conform to the subordinate constitution prepared by the home society.
This governing body at home is termed the Supreme *604 Council, and all its officers are prefixed with the same word, as supreme commander, supreme secretary, supreme treasurer and the_ like. A group of local councils may have a grand council, and all its officers are called grand. The powers of the supreme commander are very large. He can decide law questions which bind the defendant unless the supreme council annul the decision in its next meeting. The powers of_ the grand commander aré not very clearly defined but it is a fair infenence that within the scope of the powers entrusted to grand councils he is equally powerful in the district which is empraced by the grand commandery. This grand council is expressly authorized to enact laws for its own government. The sub-constitution provided that no member shall forfeit his certificate nor lose his right unless suspended in accordance with law. Article 7, section 2, and in the next section provided as follows:
Section 3. _ Members of this council who have been suspended, desiring to be re-instated, must make to this council in writing, application for re-instatement, such application to be accompanied with the full amount of arrears for dues, fines, and all assessments on or before the date of suspension * * * and this application shall be filed with the secretary of the council at such time as will enable the members to ballot thereon at any regular stated meeting thereafter held before the expiration of thirty days herein provided must be re-examined. * * * Upon all applications for reinstatement, a ballot shall be ordered by the commander, and if a majority of the ballots cast is favorable the applicant shall be declared reinstated.
The forty days expired on the 24th of September, 1885. The plaintiff had then paid- the assessment No. 75, but the collector had received it under protest. No formal paper was demanded requiring reinstatement, and no vote was then taken. The district council wrote to the supreme council, at Boston, about the case, and adjourned to the 19th of October, 1885.
The supreme secretary then wrote that the Port Jervis branch could not reinstate him without a medical examination, and on this letter the name of the suspended member was dropped. This decision of the supreme secretary was not in accordance with the laws of his society. The deceased has been, therefore, deprived of a right to a ballot and to reinstatemant without good reason. Under this state of the case, and on the 2d of November following, the grand commander sent his deputy to examine into, investigate, and decide this case.
The deputy decided that the deceased was a member in good standing by paying up all arrearages. Upon the de *605 cisión the plaintiff, on the 4th of November, 1885, paid up all arrearages,including assessments made after number 74. The district council applied to the grand commander, and he decided that he had sent the deputy, in ignorance that a decision had been made by the supreme council through its secretary, and that this supreme council had exclusive .jurisdiction of all cases involving the benefit fund. This decision is also not sustained by examination.
The supreme council decided nothing. The secretary who wrote what the law was had no power of decision, and his statement of the law was unwarranted. The benefit fund is the fund out of which death claims are paid, and while the reinstatement of a member may result in a claim against the association, and which must be paid out of the fund, it cannot be said that a reinstatement of a member involves the benefit fund. The plaintiff had the right to a ballot, and to reinstatement if the ballot was favorable. The ballot would have been favorable without doubt. It was just that it should be, and they voted that they had done all they could to get the plaintiff’s benefit, and concluded by “hoping for her to get it in some other way.” “They were prevented by a wrong construction of the law, and the reinstatement by the deputy grand commander was just and fully within his powers. His order was not reversed, but only an invalid reason was given for sending him.
The judgment should be reversed and a new trial granted, ■costs to abide event.
Pratt and Dykman, JJ., concur.