Merwin, J.
The plaintiff is a banking corporation located in New York city. Wilkinson & Co. were, for some time prior to December 9, 1884, private bankers in Syracuse. Between them and the plaintiff there was an arrangement under which the plaintiff was accustomed to *292 send to Wilkinson & Co. for collection daily such drafts, checks and notes that it held payable at Syracuse or vicinity. Such paper, when sent, was uniformely endorsed by plaintiff as follows: “Pay Wilkinson & Co. or order for collection for account of National Butchers and Drovers Bank of city of New York. W. W. Chase, cashier.”
The form of the letter sent in each case was, “We enclose for collection and credit bills as stated below;” there following in each letter a statement of the paper giving as to each item its amount, the bank where payable, and the locality of the bank. Wilkinson & Co., upon receiving such a communication, were accustomed to credit the plaintiff on their books with the total amount of cash collections, and as to the time collections to credit them to the plaintiff when they were in fact paid. In case any of the cash collections were not, upon presentment, paid, then they were charged back to the plaintiff with fees of protest, if any. Once each week Wilkinson & Co. remitted to the plaintiff the balance due it as appearing on the books of W. & Co. For collecting W. & Co. charged a rate varying from one-quarter to one-tenth per cent, averaging about three-sixteenths. This course of business seems to have been understood by the plaintiff, so that that must be deemed to have been the arrangement between them.
On the 9th of December, 1884, or at the close of that day W. & Co. failed, and made a general assignment for the benefit of creditors to the defendant Hubbell, who took possession on the morning of the 10th of December.
At the time of their failure W. & Co. had received from the plaintiff, and not returned or
paid for, paper to the amount of............ $14,245 36
Of these W. & Co. had forwarded to Errickson, Jennings & Co., of Rochester, items to the amount of....... $297 26
To W. H. Seward & Co., of Auburn... 125 67
- 422 93
$13,822 43
Also of, these there were three time collections that came into the hands of the assignee, were paid to him and the amount sent plaintiff December 26, 1884............................ '438 67
Leaving................................. $13,383 76
None of this balance has been paid to the plaintiff.
Of this balance, the sum of $9,195.60 had been in fact re *293 ceived by W. & Co. before their assignment, and had all of it been paid out, none of it apparently came to the hands of the assignee~
After the assignment, the assignee received aside from the amount @438.67 above referred to, the sum of @4,188.16. No time items are shown to have entered into this amount, nor did the paper itself pass through the hands of the assignee, but that amount was received by the assignee from correspondents of W. & Co., to whom during the week prior to the assignment W. & Co. had sent for presentment and collection divers of the plaintiff’s paper that was not payable at Syracuse.
On the 26th of December, 1884, the plaintiff gave notice to the assignee of their claim, and demanded payment of the amount received by him as well as the amount received by W. & Co. Up to this time the assignee had received from the entire estate the sum of @10,903.36, which included all but @295.48 of the above amount of @4,188.16, and he had paid out, as I understand Ms evidence, @10,--548.57, leaving @354.79. The main item paid out was a dividend of ten per cent, to the preferred creditors under the assignment, made pursuant to an ex parte order of the county judge, dated December 23, 1884.
The assignee testified that when he made these payments, he had no knowledge of the plaintiff’s claim and did not know from what funds or securities the moneys were derived. The plaintiff, however, claims that the assignee had constructive notice of the plaintiff’s rights, and that the order of the county judge does not protect the assignee in paying the dividend.
After tMs action was commenced, and pending its trial, the assignment to Hubbell has been set aside as fraudulent and void as to creditors, in an action brought by judgment creditors of W. & Co., and receivers have been appointed in that action of the property of W. & Co. Those receivers have been brought in as defendants in this action. It is not shown that any of the proceeds of plaintiff’s paper ever came into the hands of the receivers.
The endorsement of the plaintiff upon the paper sent to W„ ,& Co., was of such a character that the title to the paper did not pass to W. & Co. But the title of the proceeds when collected is another matter. The letter of plaintiff each time directed W. & Co. to collect and credit. By the arrangement the remittances by W. & Co. were to be only once a week, so that to a certain extent W. & Co. had the right to use the funds, and if so, the relation of debtor and creditor would so far exist. But without reference to this question, the case of In re Cavin v. Gleason (7 N. Y. S. R, 13), decided in court of appeals April 19, 1887), *294 disposes of the plaintiff’s claim that it has an equitable lien on the estate of W. & Co. in the hands of the assignee for the amount received by W. & Co. before the assignment. There it was held that when an assignor prior to making his assignment had in violation of his trust paid out trust funds in paying his personal debts and liabilities, the cestui que trust had no preference upon the property in the hands of the assignee, so that whatever is said to the contrary in People v. City Bank of Rochester (96 N. Y., 32) must be deemed to be overruled.
The further question is, what are the rights of the plaintiff as to the amount received by the assignee after the assignment. All of this except a small amount was paid out by the assignee before he had any express notice of the plaintiff’s claim.
It is suggested on the part of the assignee that W. & Co. had title to the paper that was uncollected at the time of the assignment, so that the assignee as against the plaintiff became the absolute owner, and the plaintiff therefore had only the position of an ordinary creditor.
I do not yield to this view. It may be that so far as collected, the moneys belonged to W. & Co., leaving only a debt due to the plaintiff. There are some cases that look strongly that way. 89 N. Y., 182; 93 id., 582; 34 Hun, 26.
As said by Judge Rapallo, in People v. City Bank (93 N. Y., 582): Each sum collected as it came in became the property of the collecting bank, who simply became liable to account for it to the other on the next settling day.”
But this would not make W. & Co. the owners of the uncollected paper. And the fact that W. & Co. on the receipt of the cash collection paper immediately gave plaintiff credit therefor, without waiting for its actual collection, would not, I think, operate to pass the title to W. & Co., inasmuch as it was not expected that W. & Co. would be absolutely liable for the amount. Their liability depended upon the fact of actual collection. The manner of credit on the. books was rather for the convenience of the business and not as indicating ownership before actual collection.
I think, therefore, that the moneys received by the assignee from plaintiff’s paper after the assignment in fact belonged to the plaintiff, and the defense of the assignee if he had one, must rest on the idea that without notice of plaintiff’s claim he has in good faith paid them out. For I suppose the rule to be as laid down by the chancellor in Haggerty v. Palmer (6 J. Oh., 438), that if the proceeds had been actually appropriated by the assignees before notice, the remedy would be gone. The assignee would be somewhat in the position of a bailee, who by direction of his *295 "bailor had paid out funds which subsequently turned out to be the property of another.
The main payment was a dividend made upon the ex parte order of the county court. I am not able to see how this order helped the assignee any, or for that matter hurt him. I find nothing in the statute that prevented the assignee from paying on preferred claims as soon as he chose, and in fact in many cases it would be his duty to make such payment as soon as possible, he of course taking the risk of the correctness of the amount. Here there is no dispute, but that the debts that the assigee paid were genuine and valid.
Coming then to the question of notice, it is not claimed that there was any actual notice, but that the circumstances were such as to amount to constructive notice.
The books of W. & Co. showed an account between them and plaintiff upon the face of which, at the date of the assignment, there was a large amount due to plaintiff. It showed a credit to plaintiff of different sums, which in fact, included all the paper the proceeds of which after-wards came into the hands of the assignees, except three time collections, which when collected were in fact transmitted by the assignee to the plaintiff. None of the other paper came into the hands of the assignee. He received the proceeds in remittances from the correspondents of W. & Co. It was possible to have ascertained from the books and papers of W. & Co., that these remittances were for paper sent by plaintiff to W. & Co., and included in some of the credits to plaintiff on W. & Co.’s books. But the question is whether in view of the account being kept as it was on W. & Co.’s books the assignee was called upon to make this investigation, in absence of any claim by the plaintiff.
The fact that the assignee on receiving the three time items sent them to plaintiff does not help the question, as those were not credited to plaintiff on the books.
The assignment was recorded on December tenth, and plaintiff probably knew of it the same day, and it, also, knew what it had sent to W. & Co., and what it had received in return. On the sixteenth of December the plaintiff writes to the assignee, inquiring whether a certain note due December eight had been paid, and also asks the assignee, at your earliest convenience send statement of our account.” On the seventeenth the assignee answered, saying that the note was paid on the eighth, and that he would furnish statement as soon as they got their inventory filed. The note referred to was in fact credited to plaintiff by W. & Co., in the ledger account of December eight.
The plaintiff in its letter of the llth made no claim on *296 the funds. Still it must then have known that the proceeds of some of its cash collections sent to W. & Co. would not have reached the hands of W. & .Co. before the assignment. The locality of the paper sent on December 8th would indicate that.
It seems to me that the failure of the plaintiff in its letter of December 16th to make any claim on specific funds is a circumstance of considerable importance on the question of notice.
As the case stands, I am of the opinion that the assignee is not chargeable with constructive notice, and that he is. entitled to the finding that the payments made by him before the service of the notice on December 26 were made by him in good faith and without notice of plaintiff’s claim.
Notwithstanding such payments, has the plaintiff an equitable lien for the amount on the balance of the estate in the hands of the assignee and receivers? Had the trust of the assignee continued to exist, there would be some basis for the argument that as the payments were in aid of the trust, the trust fund having received the benefit of the payment should replace it, or restore it to its rightful owner. But the assignment has been set aside and that trust is gone, and the trust represented by the receivers is antagonistic and the payments made by the assignee were not certainly in aid of or for the benefit of the receivership. So that the trouble is for me to see any basis for holding the estate in the hands of the receivers should be impressed with a trust by reason of payments made by the assignee on preferred debts. Under some cases it is doubtful whether as against the estate in the hands of the assignee there would be any hen, it being shown to have been in fact paid out. 82 N. Y., 193; 66 id., 395.
As the case stands, it looks to me that the claim of the plaintiff must be confined to the balance in the hands of the assignee on the service of the notice, which, as I make it, was $354.79, and to the amount afterwards received by the assignee from plaintiff’s securities being $295.48.
As to those comparatively unimportant items, the views of counsel are not fully presented in their briefs.
I suppose that the plaintiff would be entitled to recover of the assignee those sums on the the theory that after notice he did retain them, or was bound to do so to await the determination of the plaintiff’s claim. But if the counsel on either side desire to submit any views on this subject, as well as on the subject of the costs of the action, I will give them an opportunity to do so.